WILLIAM P. WILLIS et al., Respondents, v. AURELIUS S. SHARP, as Executor, etc., Appellant.

*It seems* the intention of a testator to confer on his executor power to continue a trade or business will not be deemed to have been conferred unless it is found in the direct, explicit and unequivocal language of the will.

*It seems*, also, that when the power *simpliciter* is conferred, it only authorizes the use of the fund invested in the business at the time of the testator's death; the general assets may not be used unless such an intent on the part of the testator is expressed in the will.

When such an intent does not appear a creditor has no remedy except to pursue the assets embarked in the trade or business at the time of the death.

A testator may, however, bind his general assets for all of the debts; and where such an intent finds expression in his will, in case of the insolvency of the executor, the general assets may be made liable in equity for the debts.

The will of S., after providing for the payment of debts, etc., gave all her property to her executors, in trust, to apply the income therefrom to the education and maintenance of her only son until he should arrive at the age of twenty-five years, the property and accumulations to be then divided equally between her son and husband, with cross-remainders in case of the death of either prior to the time of division.    She directed that after her death some legitimate business should be carried on by her executors for the benefit of her son, of which her husband should be retained as manager at a yearly salary.    Then followed this provision. "I do hereby authorize and empower my executors to sell or make such other disposition of my real and personal estate as the safe conduct of such business shall seem to them to require."    The testatrix at the time of her death was engaged in the merchant tailoring business, which was carried on by defendant, her husband; he was one of the executors and alone qualified, and continued the business after the death of his wife.

Plaintiffs sold and delivered to defendant, as executor, certain goods for the purposes of said business.· In an action to compel defendant to pay the purchase-price of the goods out of the assets of the estate in his hands the complaint set forth the foregoing facts, and alleged that, individually, he· was irresponsible. *Held*, that plaintiffs were entitled to the relief sought; that the provisions of the will indicated unmistakably an intention on the part of the testatrix to subject her general assets to the debts of the business and to authorize her executors to contract debts therein binding her general estate.

Reported below, 43 Hun, 434.

(Argued April 22, 1889; ·decided June 4, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 15, 1887, which affirmed a judgment in favor of plaintiffs, overruling a demurrer to the complaint.

This action was brought against defendant as executor of the will of his deceased wife, to recover for goods alleged to have been sold and delivered to him as such.

The facts are sufficiently stated in the opinion.

*Alexander V. Campbell* for appellant. Plaintiffs could not maintain their action in a court of law. (*Reynolds* v. *Reynolds*, 3 Wend. 244; *Ferrin* v. *Myrick*, 41 N. Y. 315, 322; 53 Barb. 76; *Austin* v. *Munro*, 47 N. Y. 360.)

*Walter S. Logan* for respondents. The demurrer · being upon the sole ground that the complaint does not state facts sufficient to constitute a cause of action, all other defects, if any exist, are waived. (Code, § 488; *People ex rel. Lord* v. *Crooks*, 53 N. Y. 648.) On demurrer all reasonable intendments will be indulged in favor of the pleading demurred to. (*Lorillard* v. *Clyde*, 86 N. Y. 384.) The court, under the circumstances, can and will do, or consider as done, that which ought to be done, and will, in some way, see that the fund which ought to be applied in payment for the goods which the estate has received is so applied. (Willard's Eq. Jur. 48, 49.) The direction in the will that the business be carried on by the executors is a valid provision. (*White* v. *Miller*, 71 N. Y. 127; *Ex parte Richardson*, 1 Buck. 202; *Ex parte Garland*,

10 Ves. 119.)    Although an administrator cannot bind the estate by an executory contract, nor create a future liability not founded upon the contract or obligation of his intestate, yet relief may, in a proper case, be given in equity by apply-ing funds of the estate to the discharge of an obligation entered into in good faith by the administrator on behalf of the estate, no other remedy being open to the plaintiff. (*Thompson* v. *Smith*, 64 N. H. 412.)   The case is properly brought against the executor as such.   (Code, § 1814.)

ANDREWS, J. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action.   This presents solely the question whether, upon the facts stated, a case was made for legal or equitable relief against the estate which he represents.   The question whether other parties interested in the estate, either as cred-itors or as legatees or devisees, should have been joined as defendants does not arise.   They will not be concluded except so far as the executor may be deemed to represent their interests, and the defendant, not having taken any objection on the ground of defect of parties, is deemed to have waived it (Code, § 499.)

It appears from the complaint that, on or prior to April 28, 1885, Fida C. Sharp died leaving a will of real and personal estate, whereby she devised and bequeathed all her property to Aurelius S. Sharp (her husband), and Elsie Sharp, as executors, in trust to apply the income therefrom, or such portion thereof as they should deem just, to the educa-tion, support and maintenance of her son Harry, until he should arrive at the age of twenty-five years, and then to divide the property and accumulations between her son and her hus-band, share and share alike, with cross remainders in case of the death of either prior to the time of division.   She directed that after her death some legitimate business should be carried on by her executors for the benefit of her son Harry, and that her husband, the defendant, should be retained as manager thereof at a salary of $1,500 a year, and this was followed by

a provision empowering her executors " to sell or make such other disposition of my real and personal estate as the safe conduct of such business shall seem to require." Her husband and her son Harry were the sole beneficiaries under the will, there being no legacies or provisions in favor of any other persons, except that the testatrix directed that her debts and funeral and testamentary expenses should be paid as soon as practicable after her decease. The testatrix, at and for a long time prior to her death, was engaged in the merchant tailoring business in the city of New York, and after her death the same business was carried on by her husband, as executor, under the power contained in the will, he alone having qualified as executor. Between the 15th of July, 1885, and the 15th of October, 1885, the plaintiffs sold and delivered to the defendant, as executor, for the purposes of said business, goods for the price and of the value of $1,380.73, which goods the complaint alleges were necessary for the conduct and carrying on of the business, and were purchased and used by the defendant for that purpose, and that " the estate of said Fida C. Sharp has had the full benefit thereof." It alleges that no part of the purchase-price of the goods, except the sum of $65, had been paid; that the defendant, individually, is irresponsible; and that the plaintiffs have no recourse for the payment of their debt, except the same can be paid out of the funds of the estate in the hands of the executor, which, it is alleged, are sufficient for that purpose, and that the defendant has neglected and refused on demand to pay for said goods. The relief demanded is a judgment against the executor, requiring him to pay the debt out of funds and property of the estate in his hands, and for general relief.

By the general rule the death of a trader puts an end to any trade in which he was engaged at the time of his death, and an executor or administrator has no authority *virtute officii* to continue it, except for the temporary purpose of converting the assets employed in the trade into money. (*Barker* v. *Parker*, 1 T. R. 287; 2 Williams on Exrs. [7th ed.] 791.) But a testator may authorize or direct his executor to continue a

trade or to employ his assets in trade or business, and such authority or direction, if strictly pursued, will protect the executor from responsibility to those claiming under the will, in case of loss happening without his fault or negligence, and also entitle him to indemnity out of the estate, for any liability lawfully incurred within the scope of the power. (*Burwell* v. *Cawood*, 2 How. [U. S.] 560; *Laible* v. *Ferry*, 32 N. J. Eq. 791; *Scott* v.*Izon*, 34 Beav. 434; *Lucas* v. *Williams*, 39 Gif. 150.) The courts, while they have sustained with substantial unanimity the validity of a direction of a testator in his will that his trade should be continued, whether his business was that of a sole trader or of a firm of which he was a member, have applied stringent rules of construction in ascertaining both the existence and extent of the authority of the executor. In the first place, the intention of a testator to confer upon an executor power to continue a trade must be found in the direct, explicit and unequivocal language of the will or else it will not be deemed to have been conferred (*Burwell* v. *Cawood*, *supra; Kirkmam* v. *Booth*, 11 Beav. 273), and in the next place, a power, *simpliciter*, to carry on the testator's trade, or to continue his business in a firm of which he was a partner, without anything more, will be construed as an authority simply to carry on the trade or business with the fund already invested in it at the time of the testator's death, and to subject that fund only to the hazards of the trade and not the general assets of the estate. (*Ex parte Garland*, 10 Ves. 119; *Cutbush* v. *Cutbush*, 1 Beav. 184; *Ex parte Richardson*, 1 Buck. 202; *M'Neillie* v. *Acton*, 4 De G., M. & G. 742.) The property already embarked in the business is the trade fund, unless it appears from the will that the executor was authorized to use the general assets in the business. In every case where a trade is carried on by an executor under authority of the will, questions may arise as to the respective rights of existing and subsequent creditors, that is, creditors of the testator and creditors of the trade whose debts were contracted in the business carried on by the executor. The creditors of the testator, under our statute and the general rule of law for

the administration of assets of a decedent, are entitled to
have the assets collected in and applied upon their debts,
a reasonable time being allowed for the ascertainment of
the debts and the conversion of the assets.  It would seem
that a direction of the testator that his business should
be continued would not be allowed to interfere with this
right of existing creditors, or put to hazard the property
of the testator applicable to the payment of their debts.
(*Stanwood* v. *Owen*, 14 Gray, 195.)   But this question is not
presented by any facts appearing in this case.  It does not
appear that there were any debts owing by the testatrix at
her death, or if there were such debts, that they have not been
fully paid.   The debt of the plaintiffs was contracted with the
executor.   It is the settled doctrine of the courts of common
law that a debt contracted by an executor after the death of
his testator, although contracted by him as executor, binds him
individually, and does not bind the estate which he represents,
notwithstanding it may have been contracted for the benefit
of the estate.  (*Austin* v. *Monro*, 47 N. Y. 360.)   It has
been held in numerous cases that an executor, carrying on
a trade under the authority of the will, binds himself indi-
vidually by his contracts in the trade.   He is not bound to
carry on the trade and incur this hazard, although author-
ized or directed to do so ; but if he does carry it on, the con
tracts of the business are his individual contracts.   (*Ex parte
Garland, supra ; Fairland* v. *Percy*, L. R., 3 P. & D. 217 ;
*Labouchere* v. *Tupper*, 11 Moore's P. C. 198 ; *Downs* v. *Col-
lins*, 6 Hare, 418.)   If, in this case, there was in the will sim-
ply an authority or direction to the executors to carry on a
trade, and in pursuance of the power the executor continued
the existing business, we think, under the authorities cited,
the plaintiffs could have no remedy, except to pursue the
assets embarked in the trade at the death of the testatrix.
But, as said by STORY, J., in *Burwell* v. *Cawood*, a testator
may, if he chooses, bind his general assets for all the debts of
a business to be carried on after his death.   Where this was
the intention of the testator expressed in the will, then, in

case of the insolvency of the executor, we see no reason to doubt that, in equity, the general assets become liable for the debts of the business. In *Fairland* v. *Percy (supra)*, Sir J. HANNAN states the principle. He says: "Where a testator, by his will, directs that his business may be carried on, and that his personal estate shall be used as capital with which to do so, the persons who, after his death, become creditors of the business, in addition to the personal responsibility of the individuals who gave the order for the goods, or otherwise contracted the debt, are entitled in equity to claim against the estate to the extent that he authorized it to be used in that business." (See *Owen* v. *Delamere*, L. R., 15 Eq. 134.)

The provision in the will of Mrs. Sharp, empowering her executors to "sell or make such other disposition of my real and personal estate as the safe conduct of such business shall seem to require," indicates, we think, unmistakably, an intention on her part to subject her general assets to the debts of the business and to authorize the executor to contract debts therein binding her general estate. The executor could, unquestionably, have withdrawn from the assets money to purchase the goods, and a purchase on credit was, we think, a pledge of the general assets for their payment.

We are of the opinion that the complaint, on its face, stated a cause of action in equity, and we, therefore, affirm the judgment below.

All concur.

Judgment affirmed.