(43 App. Div. 268.)

### DEXTER v. DEXTER et al.

(Supreme Court, Appellate Division, Fourth Department. September 20, 1899.)

1. PARTNERSHIP—DEATH OF PARTNER.
    The death of a partner puts an end to a partnership and the power of the survivor to carry on the business on account of the firm.
2. SAME—CONTINUANCE OF BUSINESS WITH CONSENT OF EXECUTRIX.
    Where the executrix of a deceased partner consents to the continuance of the firm business, she becomes a creditor of the surviving partner to the amount of the value of whatever interest of the estate in the firm he loses or dissipates.
3. SAME—WHAT IS FIRM PROPERTY—REAL ESTATE.
    Real estate inherited from a parent by brothers, who are co-partners, but not used in their partnership business except to occupy it, is not partnership property, in the absence of an agreement that it should be held by them as partners.
    Spring, J., dissenting.

Appeal from judgment on report of referee.

Action by Martha J. Dexter individually and as executrix against David E. Dexter and others. From a judgment entered upon the report of a referee, defendants appeal. Reversed.

Argued before HARDIN, P. J., and ADAMS, SPRING, and NASH, JJ.

John Conboy, for appellant Wilcox.

F. N. Fitch, for appellants Davis and Augsbury.

Samuel Child, for appellants Woodward and Lewis.

E. C. Emerson, for respondent Martha J. Dexter.

Geo. S. Hooker, for respondents Waddingham, receiver, and Carolyn M. Dexter.

NASH, J. The referee finds: That David Dexter died intestate on the 9th of August, 1880, leaving, him surviving, two children, Everett A. Dexter and David E. Dexter. That at the time of his death he and his son Everett were engaged as co-partners in the business of manufacturing chairs at Black River, N. Y. That upon the death of David, Sr., the two sons entered into a co-partnership under the firm name of D. Dexter's Sons. They were equal partners, and continued the same business at the same place until the death of Everett. At the time of the death of David, Sr., he was the owner in severalty of certain parcels of real estate, and tenant in common with his son Everett in others. After the death of David, Sr., Everett conveyed to David E. fractional parts of the lands in which he and his father were tenants in common, thereby making David E., with the inheritance from his father, equal owner with Everett of all the lands of which the father died seised, or in which Everett had an interest as tenant in common with his father, except as stated in the next paragraph; among which lands were the "Shop Lot," the "Sawmill Lot," and the "Tannery Lot," on which the business had been carried on by Everett and his father, and which was continued thereon by Everett and David E. during their co-partnership.

The referee finds that David E. transferred to Everett his undivided one-half interest in some other real estate which he and Everett had inherited from their father, and these transfers, it is found, were intended to equalize the interests of the two in the partnership. The co-partnership formed by Everett and David E. continued until the death of Everett, which occurred March 12, 1893. He left, him surviving, the plaintiff, his widow, and the defendant Carolyn M. Dexter, his only child and heir at law. He left a will by which he devised and bequeathed two-thirds of all his property, real and personal, to his widow, and one-third of his property to his daughter, and appointed the widow executrix, to whom letters testamentary were issued upon probate of the will. Soon after the issuing of letters testamentary, the plaintiff asked David E. to wind up the affairs of the firm. He objected, giving as a reason the expense of stopping the business at that time of the year to make an inventory, and the plaintiff consented that the business might be continued until January 1, 1894. David E. continued the business after as before Everett's death in the firm name; the firm stock was used; new stock was purchased in the name of D. Dexter's Sons; the old firm obligations were paid and new debts were contracted in the name of the firm; the same help was employed, and the same books were used. At the expiration of the year the plaintiff renewed her request that the firm matters be closed up, and continued to press such requests. David E., however, stated that the times were so bad that a sale then would be a sacrifice, and espe-

cially as a suit had been begun involving the water rights of the late firm, and the owners were parties to it, which suit was then pending. The plaintiff never consented to become a partner, nor to share the profits of the continuance of the business, nor to become responsible for any losses. But she did know that the business was being continued in the name of D. Dexter's Sons, and assented to it until such time as a satisfactory sale could be made. The business was continued precisely as before Everett's death, until July 7, 1896,—a period of three years and four months,—when David E., having become financially embarrassed, absconded, and has not returned. He paid and discharged all the debts of the firm contracted before Everett's death. In the course of the business, David E. contracted debts in the name of D. Dexter's Sons. At the time David E. absconded, he was indebted to the defendants Lewis, Woodward, Wilcox, Augsbury, and the National Union Bank on account of transactions other than in the business he had conducted in the name of D. Dexter's Sons. These defendants, after David E. absconded, commenced actions against him, and obtained attachments, which were levied upon the real estate found by the referee to have been "put into the firm," and upon the personal property belonging to the late firm of D. Dexter's Sons, and upon the personal property purchased after the death of Everett A. Dexter in the continuance of the said business in the firm name of D. Dexter's Sons, and the sheriff is still in control of the property under the attachments. Before David E. absconded, and on the 9th of January, 1895, David borrowed $3,500 on his individual account, not connected with the manufacture of chairs, from the defendant Abel Davis, and gave as security a mortgage, dated on that day, and executed by himself and wife, covering the "Shop Lot," the "Sawmill Lot," and the "Tannery Lot."

As conclusions of law the referee finds: That the real estate, the title of which, at the death of Everett, was in Everett and David E., was used and occupied by the latter after the death of Everett, and is to be deemed personal property of the firm, of which David E. is survivor, so far as the debts incurred by David E. in the name of the said firm in carrying on the business after the death of Everett are concerned. "That, the assets of the firm having been used by the survivor in purchasing other assets and property in the name of the late firm and for its benefit, and he having mingled the new property with the old, the new property will be deemed the property of the firm, and the courts will impress upon it the lien of the representative of the estate, and of the creditors whose claims were incurred in the prosecution of the business by the survivor in the name of the firm. That the representative of the estate, having consented to the continuance of the business of the late firm, and to the use of the firm property therefor, has subordinated the lien of the estate in the firm property to the claims of the creditors whose debts were incurred in carrying on the business, and the debts of the firm, if any; and the debts mentioned in the eighteenth finding of fact herein should be first paid out of the assets. That the mort-

gage of the defendant Davis is a lien upon the one-half interest of David E. Dexter in the real estate covered by it, but such lien is subordinate to the payment of the debts of the firm, if any, and to the debts so incurred in the name of the firm, after the death of Everett, and in carrying on the said business as mentioned in the eighteenth finding of fact herein." The referee further finds that the claims of the several defendants, creditors of David E., and their attachments, are liens subordinate to the payment of the debts incurred in the business of the firm carried on by him as survivor, and to the claim of the representative of the estate of Everett. We regard these conclusions of the referee erroneous. A dissolution by death puts an end to a partnership from the time of the occurrence of that event, whether known or unknown, or whether third persons have or have not notice thereof, so that it completely puts an end to the power or authority of the surviving partner to carry on for the future the partnership, trade, or business, or to engage in new transactions, contracts, or liabilities on account thereof. Story, Partn. (Bennett's Ed.) 343. Upon a dissolution by death it becomes the duty of the survivor with all practical diligence to wind up and settle the co-partnership concerns, to pay the partnership debts and obligations, and to distribute the surplus among those who are entitled to it, according to their respective shares therein. Id. 347. After dissolution of a partnership by death, the survivor has no power to incur any new liabilities on account thereof. The survivor, in the continuance of the business, can bind no one but himself, and all the liabilities of the firm fall upon him individually. Judge Earl, in Betts v. June, 51 N. Y. 279. It is urged on behalf of the respondents, creditors of the new business, that: "Where the survivor continues the business, the general rule is that the estate of the deceased partner has a lien on the assets for the amount due the estate, which is ahead of the claims of creditors which arise from the continuance of the business, and the rights of the estate are to be determined as of the time of the partner's decease. But where the representative of the deceased partner consents to the continuance of the business the lien is postponed to the claims of such creditors as are made in the business, and only attaches after the creditors are paid." That "by continuing the business the interest of the estate," as the referee finds, "has been subordinated to the claims incurred, and therefore had the right to insist that those claims should be first paid out of the property. Each, therefore, had the right to insist that the debts should be first paid out of the property, and, as this equity still exists in them, it existed in all the creditors whose claims arose in the business." A very large number of cases are cited in support of the various propositions leading up to the conclusion of the learned counsel of the respondents that the new firm creditors, as the creditors of the new business are termed, have an equitable lien upon the assets of the new business, and are to be preferred to the general creditors of the surviving partner; all of which were cases which arose between and determined the rights of the legal representative of the estate of the

deceased partner and the surviving partner, or cases determining the status of creditors where the partnership business was continued pursuant to, or by authority of, an agreement in the articles of co-partnership providing for a continuation of the business by the survivor after the death of one of the parties, or where a retiring partner allowed his interest to remain in the business of a new firm. In Stewart v. Robinson, 115 N. Y. 328, 22 N. E. 160, 163, by the terms of the co-partnership agreement it was provided that upon the death of either party the business should "be continued by the survivor" for the term of five years, "the estate of the deceased partner to have the same share and interest in the profits, and to bear the same share of the losses of the business, as would have been received and borne by the deceased partner had he lived." The survivor became insolvent. In actions brought by creditors seeking to charge the estate of the deceased partner in the hands of his executors with debts contracted by the survivor in the business, it was held that the actions were not maintainable; that the executors, although they knew of the continuance of the business, but had taken no part in the management, could not be deemed partners. Danforth, J., in the opinion of the court, said the new creditor is confined, in pursuing his remedy, to so much of the estate of the decedent as was embarked in trade and to the personal responsibility of the party who continued the business. The case of Bell v. Hepworth, 134 N. Y. 442, 31 N. E. 918, was an action in which the effect of the co-partnership agreement in the Stewart Case was further considered, and where it was held that, the executor of the deceased partner having consented to the continuation of the business, the claim of the estate was postponed to the lien of a mortgage given by the survivor to secure the loan of money used in the business. It was said in the opinion of the court that, while the strict duty of the survivor is to wind up the firm, and not to continue it any further than is necessary for that purpose, it is obvious that its continuance is not unlawful as to those who consent to it. This was said in respect to the interests of the parties then before the court; not at all in regard to the rights of general creditors, relatively or otherwise. The case of Adams & Co. v. Albert, 155 N. Y. 256, 49 N. E. 929, was one where a retiring partner allowed his unliquidated interest to be continued in the business of a new firm. It was held that the interest thus left became liable for the partnership debts subsequently incurred,—that is, the interest of the retiring partner remained at the risk of the business, although perhaps the newly-acquired assets which, in the course of the business, took the place of the old, were subject to the lien of the new debts in preference to the old,—and that the old assets remaining in specie were subject to the old, in preference to the new, debts. It was held further that the retiring partner could not, on the insolvency of the new firm, assume the position of a firm creditor in virtue of that interest, to the prejudice of actual creditors of the new firm. The suggestion that the new creditors might have an equitable lien upon the assets of the new firm was made in view of the credit which

they had extended to the new firm.  No such suggestion is pertinent ·
to the case at bar, for, as said by Danforth, J., in Stewart v. Robin-
son, there is here "no partnership, for there are no partners."  There
is a surviving partner, with whom, under all the authorities, the
new creditors deal in regard to the new business as an individual
"who can bind no one but himself."  These are some of the princi-
pal cases cited and relied upon to take the case at bar out of the
general rule that the death of a partner puts an end to a partner-
ship, and to the power of the surviving partner to carry on, for the
future, trade or business on account thereof.  The case of Durant
v. Pierson, 124 N. Y. 444, 26 N. E. 1095, is also cited as a case
"similar to the one at bar," holding the preference claimed.  There
a surviving partner borrowed money to pay the debts of the late
firm, not debts incurred in the continuation of the business by the
survivor.  A case more dissimilar than the case here could, we
think, hardly be imagined.  The course of the decision of the case
shows the tenacity with which the courts adhere to the rule that
the surviving partner has no power to create firm indebtedness.
There the surviving partner gave a note for money with which to
pay the indebtedness of his late firm, signed with the firm name by
him as survivor.  It was held that the note, in form, did not create
an obligation of the firm, and at law was unavailable as such, for
the reason that there was no power in the survivor to make it; but
that the indebtedness thus incurred in justice and equity ought to
be paid out of the firm assets, and it was so held.  But even there
Vann, J., dissented, and the general term held otherwise.

It would have been deemed unnecessary to enter into so extended
an examination of the authorities but for the fact that the proposi-
tions in support of which they are cited have been very strongly
urged upon our attention.  The principle upon which the lien in
favor of creditors of a co-partnership upon the partnership assets
is said to rest would seem to dispose of the case here upon the mere
statement of it.  In Saunders v. Reilly, 105 N. Y. 12, 12 N. E. 170,
it is held that a mere general creditor of a firm, having no execution
or attachment, has no lien whatever upon its personal assets; that,
while firm creditors are entitled to a preference over creditors of the
individual members of the firm in payment of their debts out of the
assets of the firm in course of liquidation, their equity is not held or
enforceable in their own right, but is a derivative one, practically
a subrogation to the equity of each individual partner to have the
firm assets applied primarily to the payment of its debts; and,
where no such equity exists in favor of any member of the firm, the
firm creditors have none.  The foundation of the rule as thus stated
has been questioned, and it is asserted—and very properly so, it
may be conceded—that, "as long as either partner retains his in-
terest in the co-partnership property as such, this equity remains,
and that it cannot be cut off except by the joint act of all the part-
ners conveying the property away"; citing Bulger v. Rosa, 119 N.
Y. 459, 24 N. E. 853, and Menagh v. Whitwell, 52 N. Y. 146.  The
assertion is that the equity of creditors remains so long as either

party retains his interest in the co-partnership property as such, but there are here no partnership creditors. The defendant creditors of the new business are not partnership creditors. As already stated, there are here no partnership and no partners, and the survivor has no interest in the co-partnership property as such; he holds as survivor. The plaintiff, as the legal representative of the deceased partner, stands in no better position than any other creditor. Having consented to the continuance of the business after the debts of the co-partnership were paid, she, as the executrix of her husband's will, is a creditor of David E. to the amount of the value of whatever interest of the estate in the firm he has dissipated and lost. If the lands owned by Everett and David E. at the death of Everett were deemed the property of the firm, and regarded as personal property, the result would be the same. As personal property, the title thereto would be in the survivor, with the right to dispose of it, and subject to the liabilities incurred by him in the same manner as any other property which came to his hands. But Everett and David E. were not co-partners in the undivided real estate owned by them at the time of Everett's death. It was not purchased with partnership funds, nor was it used in their partnership business, except to occupy it. There is no evidence of any agreement made by Everett and David E. that their real estate should be held and owned by them as co-partners, or in any other capacity than that implied from their inheritance and the deeds of conveyance to them as tenants in common. The finding that the transfers of real estate made by Everett and David E. each to the other were intended to equalize their interests in the co-partnership is implied from the conveyances and the fact that they entered into and transacted business together under the firm name, there being no other evidence as to what their partnership agreement was, or that any agreement in fact was ever made as to the terms of their co-partnership. It follows that the plaintiff has not, either individually or as executrix, any lien upon or equity in the property of David E. Dexter as the surviving partner of her husband or otherwise; but, as executrix and devisee of her husband, she, together with her daughter, takes the undivided interest of David E. Dexter, deceased, in the real estate of which he died seised, which interest is in no manner liable to the claims of the creditors of David E. Dexter as survivor of the firm; that the lien of the mortgage of the defendant Davis, as well as the liens of the defendant attaching creditors, are superior to, and have preference over, the rights acquired by the receiver.

Judgment reversed, and a new trial ordered before another referee, with costs of the appeal to abide the event. All concur, except SPRING, J., who dissents.

SPRING, J. (dissenting). Upon the death of Everett Dexter, the co-partnership was dissolved. The survivor was vested with the title of the co-partnership assets, charged, however, with the duty of converting them into cash, paying firm obligations, and accounting to the personal representative of the deceased co-partner for

one-half of the remaining assets. These principles are elementary, and no one seeks to dispute them. The business carried on by the co-partners for many years was that of manufacturing chairs. The manufactory was running at the time of the death of Everett. There was uncompleted work on hand, and prior to his death the business had been profitable. The plaintiff was confronted with the situation calling for the exercise of her judgment. The survivor insisted that an immediate sale signified the stoppage of the business to take an inventory, and she assented to its continuance until January 1, 1894. When that time arrived, she again urged the survivor to wind up the business, but he insisted on its prosecution, as the times were hard, and a disposal of the property would be at a ruinous sacrifice, and that a litigation was then pending affecting their water rights, which were a valuable incident to their manufacturing business. She again consented, and this acquiescence in the continuation of the business by the survivor justified his action in trying to stem the tide of depression which fell upon that industry in common with every other during that blighting period. The referee has found that the surviving partner acted in good faith, and was honestly engaged in carrying on the business because he deemed it wise so to do. The surviving partner had a reasonable time, in any event, in which to wind up the business. Like any trustee, he was invested with a fair discretion. He was not to dispose of the property immediately if such a course obviously would result in despoiling the estate committed to him. While it was his duty to close out the property, he was not permitted to carry on the business, to purchase materials, or to bind the plaintiff or the property of the deceased co-partner already embarked in the business in prosecuting the industry. Willis v. Sharp, 113 N. Y. 586, 21 N. E. 705. But, if the plaintiff consented to the perpetuation of the business, then, under that authority, the survivor could act. As was said in Bell v. Hepworth, 134 N. Y. 442, 31 N. E. 918, at page 449, 134 N. Y., and page 921, 31 N. E.:

"While the strict duty of the survivor is to wind up the firm business, and not to continue any longer than is necessary for that purpose, it is obvious that its continuance is not unlawful as to those who consent to it. It may be beneficial to all parties in interest that it should be continued."

The parties affected by the prolonging of the business were the plaintiff, as the representative of her deceased husband, the surviving partner, and the creditors with subsisting claims at the time of the dissolution. These creditors have been paid, so their interest has been extinguished. In pursuance of this authority, the survivor has carried on the business. Instead of terminating gainfully, the long period of pinching times not only prevented a profit, but resulted in running the business at a loss, and the survivor absconded. The effect of the plaintiff's action in consenting to the continuance of the business was not to commit her husband's general estate to this co-partnership. She did, however, by that action, engage that the interest possessed by her husband and embarked in the firm enterprise should be subject to any debts contracted by the survivor in carrying on the business. In Adams & Co. v. Albert,

155 N. Y. 356, 49 N. E. 929, the doctrine is thus stated at page 365, 155 N. Y., and page 932, 49 N. E.:

"When a retiring partner allows his unliquidated interest to be continued in the business of the firm, the interest thus left becomes liable for the partnership debts subsequently incurred, as well as the prior debts. It may be that newly-acquired assets, which, in the course of business, take the place of the old, are subject to the lien of the new debts in preference to the old, and that the old assets remaining in specie are subject to the old in preference to the new debts; but, with this qualification, the rule seems to be well settled in equity, and that is but another way of saying that the interest of the retiring partner still remains at the risk of the business."

Her right, as executor, to a division of the assets after the payment of the then outstanding liabilities, was relinquished, and she consented that such right should be subordinate to that of creditors whose claims arose out of the prosecution of the business. The parties evidently so understood the arrangement. The business was conducted under the same firm name. The outstanding debts were paid, and new ones, essential in the conduct of the business, were created. No new books were used. The same employés were retained, and openly and above board the manufacturing was pursued as in the lifetime of Everett Dexter. When the crash came by the sudden departure of David Dexter, July 7, 1896, the indebtedness incurred by the survivor solely in the conduct of the business had run up to nearly $10,000. In addition to that, he had contracted a heavy load of debts and liabilities for his personal benefit, entirely independent of the manufacturing industry. After he had absconded, these outside creditors pressed their claims against the property held by him as survivor, and by virtue of warrants of attachment levied upon the same, and assert their liens thus acquired are superior to the demands incurred in the carrying on of the business. Following out the general doctrine that the survivor's duty ordinarily is restricted to the conversion of the partnership assets into cash, and the payment of its liabilities and the distribution of what remains to those entitled, it is contended that this property absolutely vested in the survivor, and was applicable to his debts of every class; and those created in the prosecution of the business were not of higher grade than his obligations outside, and that plaintiff is like any other creditor. I cannot concur in that doctrine. Upon the death of Everett Dexter the manufacturing industry was a live business. Chairs were in progress of manufacture, and, in order to realize on this unfinished property, new purchases were necessary. Labor had to be put upon it, and new materials added. The plaintiff and David Dexter, in the stress of hard times, by deciding that a continuation of the business was advisable, did what any prudent man of experience would have done. It was patent that a sale then would be intolerable. She did not become a co-partner nor a creditor of David. She consented to postpone the closing out of the business, and to carry it on; and common fairness requires that the share of her husband's property already in the enterprise should be chargeable with any liabilities originating in the conduct of the business. She made no sale to David. She did not consent that her property should be subjected to the pay-

ment of his individual debts. Under her arrangement with David she ·could call him to an accounting. King v. Leighton, 100 N. Y. 386, 3 N. E. 594; White v. Reed, 124 N. Y. 468, 26 N. E. 1037. If she were a simple creditor, she could only enforce collection by judgment. David's title was not unqualified. It was like that of · a trustee, and he was liable for any misappropriation of the firm's assets. Russell v. McCall, 141 N. Y. 437–447, 36 N. E. 498. Had Everett Dexter provided by will that his co-partner should continue in the business for a time after his death, his estate would not be committed generally to the liabilities incurred therein after his death. His executor would not become a co-partner. The liability of his estate would be limited to that engaged in the co-partnership. Stewart v. Robinson, 115 N. Y. 328, 22 N. E. 160, 163. If a co-partner foresees that an immediate winding up of the concern upon his decease will entail loss upon the parties, and therefore provides that the survivor go on with the business until a more opportune time arrives for its termination, that implies that new debts will be created; that his representatives accept the hazard of the business, but only to the extent of the property invested therein. A change in the corpus of the property is inevitable. The manufactured product on hand one day is with the customer the day following. The ratable interests, however, of the survivor and the representatives of the deceased co-partner, remain intact. If the survivor despoils the property, or applies it in payment of his own debts, that is a misappropriation, because his title is not absolute. It is, instead, only for a specific purpose. If instead of the co-partners, by will or by agreement, providing for the carrying on of the business by the survivor for a definite period after the dissolution by death, the representative of the deceased co-partner assents to the prosecution of the business, the relationship of the parties is identical with that arising from the provision made by the co-partner in his lifetime. The survivor in either case is in command. No partnership exists in fact, but the property of the decedent in the enterprise is chargeable with the payment of new debts incurred in its prosecution. If, after the death of a member of a firm of country merchants, the survivor, realizing a conversion of the goods into cash cannot be had at once, induces the representative of the deceased co-partner to defer closing out the business for a few months, and to carry it on, can it be said this acquiescence makes the executor a mere creditor of the survivor? In carrying on the business, a few yards of dress goods, a few pounds of coffee, tea, and sugar, must be added to the stock, but the consent to this replenishing does not enlarge the survivor's title in the property purchased or that already on hand. Nor does it make this property amenable to the personal debts of the survivor.

The injustice of the converse of these propositions is well illustrated by the result which will follow by carrying out the policy enunciated in the prevailing opinion in this case. Upon the death of Everett Dexter there were liabilities against the firm aggregating nearly $3,000. The present creditors who maintain their debts are primarily chargeable against the assets of the manufacturing

industry put their substance into that business, and it was used in paying these firm obligations. Yet now, by some legerdemain in legal psychology, they are subordinated to the individual creditors of David Dexter, and by the executor's acquiescence in the continuance of the business, when every one would say her assent was judicious, she is a creditor of the survivor, and the property belongs unqualifiedly to David. The reasons why firm property is primarily applicable to firm debts are that these debts are created on the strength of the firm property, and their consideration goes into that business. The reasons are as plain as a pike staff for the enforcement of the same equitable principles in this case. There is a multitude of authorities in the text-books and reports holding that when the executor or surviving partner engages in business he is personally liable for any debts he makes. Ferrin v. Myrick, 41 N. Y. 315; Colly. Partn. § 130; Schmittler v. Simon, 101 N. Y. 555, 5 N. E. 452; Thomas, Estates by Will, p. 771 et seq. The distinction in this case is that the surviving partner carried on the business with the consent of the representative, and, under all the authorities, that takes it out of the general doctrine referred to. To me the deductions seem inevitable that the property in the hands of the survivor at the time he decamped was subject, in the first instance, to the debts contracted by him in its prosecution; that the residue, if any, belonged, one-half to the plaintiff, as the representative of her husband, and the other one-half to David Dexter; that the attempted enforcement by attachment of the debts of the individual claimants anterior to the demands of the firm creditors is invalid. But it is claimed that the real estate is not part of the co-partnership assets. The learned referee has decided otherwise, and has grouped together abundant facts to sustain his finding. He further finds that the real estate was made co-partnership property by agreement of Everett and David Dexter, and was so treated during the existence of the firm. The land comprised various parcels, which, in the main, were used in carrying on the manufacturing pursuit. Portions were rented from time to time, and the rentals were credited to the firm. One tract was a wood lot, and the timber was sold, or used for the benefit of the co-partnership. When David went into the firm, he and his brother executed among themselves conveyances of these several tracts for the purpose of equalizing their interest as co-partners, and a subsequent conveyance running to the two as grantees described them as "composing the firm of Dexter Brothers." The improvements made and the taxes levied were paid out of the co-partnership assets, and in everything pertaining to this land it was evidently regarded by the co-partners as much firm property as the chairs made by them, or the book accounts for the goods sold. Whether real estate used by the firm, but in the name of the co-partners individually, is co-partnership property or not, depends upon the intention of the co-partners. That intention is gathered from the facts, and, if the property has been treated and regarded by the co-partners as among their company assets, it will possess that character. Fairchild v. Fairchild, 64 N. Y. 471; Darrow v. Calkins, 154 N. Y. 503, 514, 49 N. E. 61; MacFarlane v.

MacFarlane, 82 Hun, 238, 31 N. Y. Supp. 272. The principle is thus stated by Story in his work on Partnership (6th Ed. § 92):

"But, however the title may stand at law, or in whosoever name or names it may be, the real estate belonging to the partnership will, in equity, be treated as belonging to the partnership, like its personal funds, and disposable and distributable accordingly; and the parties in whose names it stands, as owners of the legal title, will be held as trustees of the partnership, and accountable accordingly to the partners, according to their several shares and rights and interests in the partnership, as cestuis que trustent or beneficiaries of the same."

The mortgage to Davis was confessedly for an individual debt of David Dexter. This was an attempted appropriation of the firm property for the personal debt of the survivor, and is inferior to the debts created in the prosecution of the business. The referee has collated the facts showing Davis' knowledge of the way in which the business was carried on by the two brothers after the death of their father, and of its continuance after the death of Everett. He recites the facts justifying his conclusion that Davis was called upon to inquire as to the status of the firm property before accepting a mortgage from David for his personal indebtedness. It is not necessary to prove he had actual knowledge, but, if his familiarity with the property and with its management was sufficient to require him, as a prudent man, to ascertain its real situation, then he has not obtained a lien superior to that of the firm creditors. Smith v. Weston, 159 N. Y. 194, 54 N. E. 38; Bank v. Weston, 159 N. Y. 201, 54 N. E. 40; First Nat. Bank v. National Broadway Bank, 156 N. Y. 459, 51 N. E. 398. As was said in the case last cited, at page 468, 156 N. Y., and page 400, 51 N. E.:

"Knowledge of the trustee's violation of the trust conditions will be chargeable to the person dealing with him, if the facts were such as, in reason, to put him upon inquiry, and to require him to make some investigation, as the result of which the true title and authority of the trustee might have been disclosed."

The learned referee has given a very exhaustive examination of this case, and the conclusions of law made by him are well sustained by the facts, and in line with the authorities, and the judgment should be affirmed.