ISAAC SAPERSTEIN, Respondent, *v.* MOYER ULLMAN, as Executor, etc., of AMELIA ULLMAN, Deceased, Appellant.

*Will — conditional authority given by, to continue a business — an indebtedness incurred in so doing is not collectible from the estate.*

The will of a testatrix, who at the time of her death was conducting, through the agency of her husband, a clothing business, bequeathed to her husband, whom she appointed her executor, the income of her real and personal estate during his natural life or until he should marry again, subject to the duty of providing for the support of the testatrix's daughter. It further provided, "*It is*

*my wish that my husband continue the clothing business as now conducted so long as he continues sober and of good habits to properly conduct the same."*

*Held,* that the estate of the testatrix was not chargeable with debts contracted by the husband in the business after her death.

McLENNAN and SPRING, JJ., dissented on the ground that the part of the estate invested in the business was chargeable.

APPEAL by the defendant, Moyer Ullman, as executor, etc., of Amelia Ullman, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Jefferson on the 24th day of October, 1899, upon the report of a referee.

*Fred B. Pitcher,* for the appellant.

*N. F. Breen,* for the respondent.

ADAMS, P. J.:

By the uncontroverted facts of this case, it appears that Amelia Ullman died at the city of Watertown in August, 1897, leaving a last will and testament, in and by which the defendant, her husband, was appointed sole executor. The will was thereafter duly probated, and the defendant thereupon qualified as executor, and has ever since continued to act as such.

For a number of years prior to her death, the testatrix had been the owner of a clothing store which, during her lifetime, was conducted by her husband as her manager and agent. The stock in trade consisted of clothing and gentlemen's furnishing goods, and this, together with a house and lot, some household furniture, a small amount of cash and some notes and store accounts, constituted her entire estate.

By the 1st clause of Mrs. Ullman's will she gave and bequeathed to her husband the use, income and profit of her estate, both real and personal, for and during his natural life, for his support and maintenance, "subject to always providing for my daughter Florence a home, and to provide for all her wants in sickness and in health; and in case my said daughter shall, for cause, prefer to live elsewhere, rather than with my husband, then, and in that case, I give for her support out of the income of my estate that* weekly

---

\* *Sic.*

sum of not less than eight dollars per week, or, if not sufficient for her support, such additional sum as may be necessary for her support, and I charge my estate with the payment of the same as long as she remains single. *It is my wish that my husband continue the clothing business as now conducted so long as he continues sober and of good habits to properly conduct the same, and my devise to him of the use during life of my real and personal property is upon condition that he does not again marry.*"

After the death of Mrs. Ullman the defendant continued to carry on the business, and in the course of about a year he purchased some goods of the plaintiffs, and to recover the purchase price thereof this action is brought.

The defendant suffered judgment by default. An execution was thereupon issued, and a levy thereunder was made upon the household furniture which formerly belonged to Mrs. Ullman. The default was subsequently opened and the defendant answered, but the levy was allowed to stand as security.

Upon the state of facts above narrated, the single question to be determined is, whether or not this action can be maintained against the defendant in his representative capacity.

It is a well-settled rule that the death of a trader, generally speaking, puts an end to the business in which he was engaged at the time of his death; and, ordinarily, all that remains for his personal representatives to do is to convert the assets employed in the business into money as speedily as practicable. (Williams Exrs. [7th ed.] 791.)

There are instances, however, in which this rule has no application, as, for example, where the testator directs the executor to continue in business and to devote the assets of the estate to that purpose. Such testamentary directions are often made, and when expressed in unequivocal language they will be upheld and enforced by the courts. The rule of construction in such cases, however, is a most rigid one, and in *Willis* v. *Sharp* (113 N. Y. 586, 590) it is thus stated : " In the first place, the intention of a testator to confer upon an executor power to continue a trade must be found in the direct, explicit and unequivocal language of the will, or else it will not be deemed to have been conferred (*Burwell* v. *Cawood, supra ; Kirkman* v. *Booth,* 11 Beav. 273), and, in the next place, a

power, *simpliciter*, to carry on the testator's trade, or to continue his business in a firm of which he was a partner, without anything more, will be construed as an authority simply to carry on the trade or business with the fund already invested in it at the time of the testator's death, and to subject that fund only to the hazards of the trade and not the general assets of the estate."

In the case cited the testatrix directed that after her death some legitimate business should be carried on *by her executor*, for the benefit of her son, of which business her husband should be retained as manager at a yearly salary, and then followed this provision : " I do hereby authorize and empower *my executors* to sell or make such other disposition of my real and personal estate as the safe conduct of such business shall seem to them to require."

Thus it will be seen that in this instance there was not only an express direction to the *executors* to conduct a business in their representative capacity, but they were in like manner empowered to employ so much of the real and personal estate of the testatrix as might be necessary for that purpose. In these circumstances it was properly held that the language of the will indicated an unmistakeable intention upon the part of the testatrix to subject the general assets to the debts of the business and to authorize the executors to contract debts therein binding her general estate.

In the present case, however, there is an utter absence of any language which will bear such a construction. Not only is there no authority conferred upon the defendant to employ the assets of the estate in the business or to contract debts therein binding upon the estate of his wife, but he is not even authorized, as executor, to carry on the business. There is a wish expressed by the testatrix that her " husband " continue the business " as now conducted so long as he continues sober and of good habits," and nothing more. Whether he was to continue the business as executor, agent or individually does not appear. The probability is that, in providing that her husband might have the use of the property during his lifetime, upon condition that he kept sober and did not remarry, the testatrix simply intended to give expression to a wish that he should continue in the business which he had theretofore managed as her agent. She certainly did not in " plain, unequivocal language "

indicate that the business was to be conducted by him as her execu-
tor; and much less did she express any intention to charge her
estate with any debt which he might contract in the course of such
business.

Within the rule laid down in *Willis* v. *Sharp* (*supra*) we think it
is quite clear that the plaintiff's remedy was against the defendant
individually, and not as executor. The judgment should, conse-
quently, be reversed.

WILLIAMS and LAUGHLIN, JJ., concurred; dissenting opinion by
McLENNAN, J., in which SPRING, J., concurred.

McLENNAN, J. (dissenting):

The action was commenced on the 31st day of January, 1899, to
recover for goods alleged to have been sold and delivered by the
plaintiff to the defendant, as executor, between the 1st day of August
and the 10th day of September, 1898, at the agreed price and value
of $114.13. The value of the goods, the sale and delivery to the
defendant, as executor, and that no part of the purchase price has
been paid, is admitted, and none of the other facts are in dispute.

Amelia Ullman died in August, 1887, leaving a last will and tes-
tament, which was duly probated, and of which the defendant,
Moyer Ullman, was appointed sole executor. He duly qualified,
and has ever since acted as such. For many years prior to and up
to the time of her death Amelia Ullman had conducted a clothing
store in the city of Watertown, N. Y., through and by her husband,
Moyer Ullman, as her agent, and at the time of her death had on
hand a considerable stock of clothing, gents' furnishing goods, etc.

By the 1st clause of her will Amelia Ullman gave to her husband,
this defendant, the use, income and profits of her real and personal
estate, for and during his natural life, or until he should marry
again, for his support and maintenance, subject to providing for the
support of her daughter Florence during her life, or until she should
marry, which support was made a charge upon the estate. This
clause of the will then concludes as follows: "It is my wish that
my husband continue the clothing business as now conducted, so long
as he continues sober and of good habits to properly conduct the
same, and my devise to him of the use, during life, of my real and
personal property is upon condition that he does not again marry."

By the 3d clause of the will the testatrix, subject to the bequest above referred to, devised all her property, both real and personal, to her four children, Isadore, Julia, Samuel and Florence, share and share alike, and then follows : " My purpose in making this will is to provide for the support of my husband, so long as he remains single, and my daughter Florence, and the use of my property given to my husband is for his and my daughter's support, subject to the conditions attached thereto."

After the death of the testatrix the defendant carried on the business as before, bought and sold goods, and assumed to do so as executor, and as such assumed to purchase the goods in question. They were put in the store with the rest of the stock and treated as a part thereof.

The property of the estate of the testatrix at the time of her death amounted to $11,066.08, and consisted of a house and lot, in which the family lived, valued at $4,000, the stock of goods, valued at $4,967.29, and the balance was made up of accounts, cash on hand, a note, and the household furniture used by the family. At the time of the trial the stock of goods had been sold, the business discontinued, and all the proceeds of the stock and business paid out and expended by the executor, and he was wholly insolvent. The only property of the estate remaining was the house and lot and the household property.

At the close of the evidence the plaintiff made a motion to amend the complaint by adding to the demand for judgment "and for such other and different relief as seems proper." The motion was granted, without objection, and the complaint was so amended.

Did the defendant have authority to purchase the goods in question as executor, and, if so, to make the purchase price a charge upon the estate generally, or upon such part of the estate as was invested in the clothing business? Those are the only questions presented by this appeal. Such authority, if it exists, must be found in the clause of the will : " It is my wish that my husband (my executor) continue the clothing business as now conducted, so long as he continues sober and of good habits to properly conduct the same."

The life estate of the defendant and his entire interest in the property was to cease in case he married again, and his conduct of

the clothing business was to end immediately, unless he continued sober and of good habits. By the will the entire property of the testatrix was charged absolutely with the support of the daughter Florence until she married, and with the support of the defendant unless and until he married again. Upon the marriage of the daughter Florence and of the defendant, the entire estate descended to Florence and the other three children, share and share alike.

The rules of law laid down in the case of *Willis* v. *Sharp* (113 N. Y. 586) are decisive of the questions presented by this appeal. In that case Judge ANDREWS, in stating the opinion of the court (at p. 590), says: " The courts, while they have sustained with substantial unanimity the validity of a direction of a testator in his will that his trade should be continued, whether his business was that of a sole trader or of a firm of which he was a member, have applied stringent rules of construction in ascertaining both the existence and extent of the authority of the executor. In the first place, the intention of a testator to confer upon an executor power to continue a trade must be found in the direct, explicit and unequivocal language of the will, or else it will not be deemed to have been conferred (*Burwell* v. *Cawood, supra; Kirkman* v. *Booth*, 11 Beav. 273), and in the next place, a power *simpliciter* to carry on the testator's trade, or to continue his business in a firm of which he was a partner, without anything more, will be construed as an authority simply to carry on the trade or business with the fund already invested in it at the time of the testator's death, and to subject that fund only to the hazards of the trade, and not the general assets of the estate. \* \* \* The property already embarked in the business is the trade fund, unless it appears from the will that the executor was authorized to use the general assets in the business." (*Dexter* v. *Dexter*, 43 App. Div. 268.)

Clearly, under those rules, the defendant was authorized to continue the business of the testatrix. This authority is found in the " direct, explicit and unequivocal language of the will." The language of the will is " It is my wish that my husband continue the clothing business as now conducted." Language more direct or explicit to express the intent of the testatrix could not be used, and there is nothing in the context or other parts of the will to throw doubt upon the intention as expressed.

It is equally clear that the language employed simply gives the executor the power to carry on the trade. He is not directed, he is simply authorized, and, therefore, the executor only had the power "to carry on the trade or business with the fund already invested in 'it at the time of the testator's death, and to subject that fund only to the hazards of the trade, and not the general assets of the estate."

There is no evidence before us which tends to prove that the house and lot or the household furniture left by the testatrix was invested in the business at the time of her death.

It is true the defendant testifies: " Prior to my wife's death there was no particular fund set apart for the business; we used the whole estate, or such part as was necessary ; we used all the property of the estate to establish credit for the business; * * * · all our money was used in clothing business."

That evidence does not tend to show that the house and lot, or the household furniture. was invested in the clothing business. The fact that property may be considered as taken into account by a person extending credit to the owner, is no proof that such property is invested in a particular business in which such owner is engaged. There are no words in the will which in the slightest degree indicate that the testatrix intended that such property should be subject to the hazards of trade ; but, on the contrary, the will itself negatives such intent. No power of sale or power to mortgage the real estate is given, and the executor took no right, title or interest in or to the same, except a life use or until he married again, and such use was subject to the support of his daughter Florence. It would be absurd to hold that by the clause simply authorizing the defendant to " continue the clothing business," the testatrix intended indirectly to authorize him to incur indebtedness, and in that manner in effect interpolate into the will the power to sell real estate.

The conclusion would be equally absurd, considering the language of the will, that the testatrix intended that the household furniture should be subject to the hazard of the clothing business ; and the evidence before us fails to justify the conclusion that it was so invested at the time of the death of the testatrix.

The conclusion is reached that, as between the plaintiff and the defendant, any of the assets remaining in his hands, except the

house and lot and the household furniture, or the proceeds thereof, is applicable to the payment of the plaintiff's judgment; but that, as the judgment is general and authorizes an execution to issue, and a levy under it upon any assets of the estate, whether invested in the clothing business at the time of the death of the testatrix or not, the judgment should be modified by inserting a provision that the judgment shall not be a lien upon the house and lot of which the testatrix died seized, or satisfied out of the proceeds thereof, or out of the household furniture of which the testatrix was the owner and possessed at the time of her death, or out of the proceeds of such property.

I think the judgment appealed from should be modified as above indicated, and as modified affirmed, without costs of this appeal to either party.

SPRING, J., concurred.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.