In the Matter of the Estate of BYRON W. BRAMER, Deceased.

Surrogate's Court, Chenango County, June 8, 1934.

*Edward H. O'Connor*, for the administrators.

*Joseph M. Forsythe*, special guardian for infant parties.

*Bonney & Bonney*, for certain claimants.

*Wager, Griffith & Wager*, for Field & Start, Inc.

BROWN, S. This is a proceeding for the judicial settlement of the account of the administrator and administratrix of the estate of Byron W. Bramer, who died November 19, 1929, intestate, leaving Elnora L. Bramer, his widow and the administratrix in this proceeding, and two children, Robert L. and Flora L. Bramer, each minors. Letters of administration were issued to Elnora L. Bramer, the widow, and Lewis H. Bramer, a brother of decedent, on December 2, 1929. An inventory of the estate dated June 30, 1930, was filed August 25, 1932. In this the assets of the estate were appraised as follows: Cash on deposit in bank, $56.11; stock of merchandise, $7,661.46; accounts receivable, $5,243.34; personal property, consisting of store equipment, $620. Claims aggregating $2,711.37 have been presented to the accounting parties. It is conceded that the indebtedness represented by these claims was incurred subsequent to the death of Mr. Bramer by the representatives of the estate and while they were carrying on business in the name of the estate. Field & Start, Inc., has a claim amounting to $1,340.45, being for merchandise and groceries sold and delivered to the representatives of the estate during the time they were carrying on the business. To secure this claim the administrator and administratrix on or about August 9, 1932, executed a chattel mortgage upon certain personal property, consisting of store equipment used in the business conducted by the decedent at the time of his death. This mortgage was signed as follows: " Lewis H. Bramer, Elnora L. Bramer, each individually and also as administrator and administratrix respectively of the estate of B. W. Bramer, dec."

It is most unfortunate for the estate and all concerned that it was not closed and a judicial settlement of the account of the representatives of the estate had within a reasonable time following the decedent's death. Instead they carried on a business, making

purchases of merchandise, extending credit to customers and using proceeds from the business in the support of the family of the decedent. There is no claim here of any defalcation on the part of the representatives of the estate or any intentional mismanagement in the handling of the funds belonging to the estate. They were inexperienced in the settling of estates and not conversant with the rights and duties of administrators.

It appears from the proof before this court that all of the debts owing by the decedent at the time of his death were paid within eighteen months or two years after his death. The figures, as put together in the account which has been filed, show that there is now on hand a balance of $384.67 in cash and certain personal property consisting of the store equipment (being the property listed in the chattel mortgage) and uncollected accounts receivable of $3,894.46. While the account does not so state, it has been asserted on the hearings, and apparently conceded, that these accounts receivable are worth very little, if anything.

Two questions are involved in the accounting proceedings. One relates to the right of claimants who have presented claims to have the same charged against the estate, and the other pertains to the status of Field & Start, Inc., as mortgagee in enforcing the lien of the chattel mortgage. It is undisputed that the indebtedness evidenced by the claims filed was incurred by the administrator and administratrix following Mr. Bramer's death and while they were carrying on the business. They had no authority to carry on the business of the decedent at the risk of the estate. Their acts were binding on them as individuals but not on the estate they represented. The law casts upon them the duty of marshaling the assets, paying the funeral expenses and the expenses of administration and distributing the estate left for distribution among those entitled to the same. Their unauthorized acts created no liability enforcible against the estate. The courts have repeatedly held that administrators cannot continue the business of a decedent at the risk and expense of an estate and that those dealing with administrators are dealing with them personally and that the estate is not bound by their acts.

In *Stedman* v. *Feidler* (20 N. Y. 437), speaking of the right of an administrator to continue the business of a decedent, the court said: " The defendant Feidler, was acting in all his relations with the other defendant, in his capacity of administrator alone of Hart. He had no right to incur new responsibilities or liabilities after the death of his intestate. His duties were confined to selling and disposing of the share to which the estate was entitled and to nothing more. He could not continue the business at the risk and

expense of the estate. The share of the intestate passed at his death to his personal representatives, and he as administrator was required to settle the business of the estate as soon as possible."

In *Willis* v. *Sharp* (113 N. Y. 586) Judge ANDREWS, writing for the court, says: " By the general rule the death of a trader puts an end to any trade in which he was engaged at the time of his death, and an executor or administrator has no authority *virtute officii* to continue it, except for the temporary purpose of converting the assets employed in the trade into money." And again (at p. 591): " It is the settled doctrine of the courts of common law that a debt contracted by an executor after the death of his testator, although contracted by him as executor, binds him individually, and does not bind the estate which he represents, notwithstanding it may have been contracted for the benefit of the estate."

In *Matter of Van Slooten* v. *Dodge* (145 N. Y. 327) the rule is reiterated that " an executor cannot subject the estate in his hands for administration to some new liability, either by his contract, or by his wrongful act." (*Ferrin* v. *Myrick*, 41 N. Y. 315; *Rogers* v. *Wendell*, 54 Hun, 540, 543; *Schmittler* v. *Simon*, 101 N. Y. 554, 557.)

"All persons dealing with executors or trustees are charged with the knowledge of the limitations which the law places on their powers." (*Delaware, L. & W. R. R. Co.* v. *Gilbert*, 44 Hun, 201.)

It would seem clear that the claimants here are not entitled to enforce their claims against the estate of the decedent and that any liability incurred by the representatives of the estate was an individual liability.

It would seem that the mortgagee named in the chattel mortgage is in a position no different from or better than that of other claimants who have sold merchandise to the administrator and administratrix while they were engaged in carrying on a business. The indebtedness which the chattel mortgage was given to secure accrued during the time that the administrator and administratrix were conducting the business and represented the cost of merchandise sold them. The indebtedness did not arise during the lifetime of the decedent nor pursuant to any contract entered into with him. In speaking of a contract made with an executor in *Austin* v. *Munroe* (47 N. Y. 360) the court says: " The contract, although made by the defendants in form as executors, did not bind the estate or create a charge upon the assets in the hands of the defendants. If the contract was valid in other respects, it bound the defendants personally, and not as representatives of the decedent."

In *O'Brien* v. *Jackson* (167 N. Y. 31) we find the following: " The general rule is well settled in this state that executors or

trustees cannot, by their executory contracts, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration, bind the estate and thus create a liability not founded upon the contract or obligation of the testator." (*Matter of Van Slooten* v. *Dodge, supra; Columbus Watch Co.* v. *Hodenpyl*, 135 N. Y. 430; *Saperstein* v. *Ullman*, 49 App. Div. 446; *Matter of United States M. & T. Co.*, 114 id. 532; *Matter of Glass*, 134 Misc. 291.)

The administrator and administratrix were without any lawful authority to incumber by mortgage any part of the assets of the estate to secure an indebtedness incurred by them and for which they became in law personally liable. (*Parker* v. *Day*, 155 N. Y. 383; *Packard* v. *Dunfee*, 119 App. Div. 599; *Bottome* v. *Neeley*, 124 id. 600; *Collins* v. *McWilliams*, 185 id. 712; *Darling* v. *Powell*, 20 Misc. 240.)

The attorney for the mortgagee urges with considerable force that the children of the deceased and the widow of the deceased were supported in part at least from the proceeds of the merchandise in the store, some of which perhaps may have been furnished by Field & Start, Inc. However, in my judgment, this does not justify the court in holding that any lien attached to the interests or shares of the infant next of kin and distributees. Their interest in the property mentioned in the mortgage could not be subjected to a lien by an unauthorized act of the administrator and administratrix.

Subject to the payment of the debts owed by the decedent and of the funeral expenses and expenses of the administration, the assets comprising this estate became the property of Elnora L. Bramer, the widow, and Robert L. and Flora L. Bramer, children, each being entitled to one-third thereof. They were the actual owners of the property covered by the chattel mortgage, although no actual distribution had been made. I am of the opinion that the execution of the chattel mortgage by Mrs. Bramer individually constituted a lien upon her one-third interest in the property described in the mortgage and that same may be enforced against such interest, and that the interests of the two minors therein are not subject to any lien by virtue of said mortgage.