## BOMFORD ET AL. VS. GRIMES AS AD.

The estate of a deceased person, in the hands of his administrator, is not liable to pay for medical services rendered to the family of the deceased after his death.

It is the right, and duty of an administrator to employ medical attendance for the slaves of the deceased, in his possession, when sick; and it would be the duty of the Probate Court to allow such expenses, as costs of administration.

But the employment in such case would be a personal contract, as between the administrator and physician; and compensation therefor could not be recovered in an action of assumpsit against the administrator as such, as upon a promise by the intestate.

*Appeal from Sebastian Circuit Court.*

The Hon. FELIX J. BATSON, Circuit Judge.

S. F. CLARK, for appellants.

S. H. HEMPSTEAD, for appellee.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This was an action of assumpsit, brought by Bomford and Shu-

mard, partners in the practice of medicine, against Marshall
Grimes, as administrator of John Booth, deceased, in the Sebas-
tian Circuit Court.

There are three counts in the declaration :

The *first count* alleged that Booth, the deceased, in his life-
time, was indebted to the plaintiffs in the sum of $466 50, for
medical services, &c.

The *second count* alleges a like indebtedness of Booth, in his
lifetime, to the plaintiffs, and a promise to pay the same by the
defendant, as his administrator, after his death.

The *third count* alleges, that the defendant, as such adminis-
trator, was indebted to the plaintiffs in a like sum for medical
services, &c., rendered to Booth, and members of his family, be-
fore and after his death, &c.

The defendant filed two pleas of non-assumpsit :

1. That he did not undertake and promise, &c., in manner and
form, &c., as alleged.

2. That his intestate, Booth, did not, in his lifetime, undertake,
&c., &c., as alleged.

The cause was submitted to the court, sitting as a jury, upon
the following testimony, in substance :

*Scott* testified, that he was at Booth's, just before his death,
and during his last illness, and knew of Bomford, one of the plain-
tiffs, making a medical visit there.   There were, at the time, three
others of the family sick besides Booth, and in an adjoining room
to that in which he lay.   They were colored girls, composed a
part of Booth's family, and were said to be his daughters; they
had been raised in his family—were recognized as part of it by
Booth, and he had supported them, paid their medical bills, &c.
Dr. Bomford while there, mixed up medicine, and went into the
room where the girls were, &c.   Witness thought he heard Booth
direct Bomford to attend upon the girls, and give them his medi-
cal assistance, but of this he was not certain.   All witness knew
of plaintiff's medical services to Booth and family, was the one
visit above referred to, except that, on the day before this, he

met Dr. Bomford on his way to the residence of Booth, &c. The distance from Fort Smith, where plaintiffs resided, to the residence of Booth, was nine miles or more. Booth died on the next day after the visit of Bomford, above referred to, in the summer of 1853. Bomford administered two or three doses of medicine while there. Witness saw him give medicine to the deceased.

*Baker* testified, that in the year 1853, he was sheriff of Sebastian county, and shortly after the death of Booth, he, as public administrator, took possession of his estate. That, on the second day after the death of Booth, witness went to his residence for that purpose, and found eight persons of the family lying very sick, and the plaintiffs were attending upon them as their physicians. Three of the sick persons were colored girls, free, and said to be daughters of the deceased, and the remaining five were his slaves. Witness, as such public administrator, directed the plaintiffs to continue their medical services to all the sick, and endeavor to cure them. Witness was present and knew of plaintiffs' making five or six subsequent visits to them. Witness advised with plaintiffs in regard to their disease, and sometimes administered the medicines prescribed, &c. Sometimes one of the plaintiffs visited them, and sometimes the other. The patients were all afflicted with flux, were quite sick, and several of them dangerously so. Witness thought several of their lives were saved by the attentions of the plaintiffs. Witness resided in Fort Smith, and in addition to the five or six visits of the plaintiffs, when he was present, he, on several occasions, saw the plaintiffs, on their return to town from the residence of the deceased, and enquired of them concerning the sick. He knew of plaintiffs administering as many as 35 or 40 doses of medicine while attending on the family, and the patients all got well under their treatment. Plaintiffs attended there, first and last, after the death of the deceased, about 15 or 18 days. Booth died 22d June, 1853.

*Stephens* testified, that soon after the death of Booth, Baker, the public administrator employed him to take care of the property of deceased, and give assistance to the sick family. That

42c

there were eight persons of the family, the three yellow girls, and five slaves, very sick with the flux, for about fifteen days after the death of Booth; and one or the other of the plaintiffs visited them every day during that time, &c. The distance from Fort Smith to the residence of Booth, was over ten miles. Plaintiffs were regular physicians, and rendered beneficial services to the estate of Booth.

*Dr. Main* testified, that the customary charges of physicians, were, one dollar per mile for travel from the physician's residence, to the patient; and one dollar for each and every patient attended to for examination and prescription, and 25 cents extra for each ordinary dose of medicine administered. If the visit was paid in the night time, the physician was entitled to double mileage. If a physician traveled ten miles, and examined or prescribed for seven patients in a family, he was entitled to $17 for it, and also, to twenty-five cents per dose for such medicines as he administered. If he attended upon five patients he was entitled to $15, &c. Witness had examined the plaintiffs' bill of particulars, and did not think the charges too high. The bill does not appear in the transcript.

It was admitted, that before the suit, plaintiffs had exhibited their account, properly authenticated by the affidavit of one of them, to the defendant, Grimes, as administrator of Booth, for allowance and classification, and that he had refused to allow more than $30 of it.

It was also shown that letters of administration upon the estate of Booth, were granted to Grimes, on the 20th October, 1853.

Upon the above evidence, the court found, "that said John Booth, in his life-time, did assume and promise, in manner and form, as the said plaintiffs had complained against him, and assessed the plaintiffs' damages by reason of the premises, to *thirty dollars:*" and judgment was accordingly rendered against the defendant, as such administrator, for that sum with costs, &c.

The plaintiffs moved for a new trial, which the court refused;

they excepted, took a bill of exceptions setting out the evidence, and appealed to this court.

It is to be inferred, that the court found in favor of the plaintiffs for so much of their account, only, as was for services rendered by them, to Booth and his family, during his life-time; and this is complained of as an error, the plaintiffs insisting that they were entitled to a finding and judgment for that portion of their demand, also, which was for services rendered by them, after the death of Booth, to the three yellow girls and the five slaves. No doubt, from the evidence, but that the plaintiffs are justly entitled to compensation from some source for these services; but, could they legally recover therefor, of the defendant, Grimes, as the administrator of Booth, in this action?

It is manifest, that our statute of administration provides for the allowance and classification of no claims or demands against the estate of a deceased person, (other than for funeral expenses,) but such as arise upon contracts or liabilities made or incurred by him, in some way, during his life-time. See *Digest, chap.* 4, *secs.* 85 *to* 106.

The estate of an intestate, after the setting apart of the widow's dower, is to be appropriated to the payment of such claims, in the order in which they are classed by the statute, with the necessary expenses of administration, and the residue of the estate, if any, is distributed to the children, or next of kin, &c.

It seems that three yellow girls, who were attended by the plaintiffs, after the death of Booth, were his daughters, and had been raised and supported by him as members of his family.

The statute allows to the widow and family of the deceased, such grain, meat, vegetables, groceries and other provisions on hand, as may be necessary for their subsistence for twelve months, &c., (*Digest, chap.* 4, *sec.* 56,) but makes no provision for paying medical bills.

For medical services rendered to minor children, after the death of the intestate, the physician must look to their guardians, or other persons who have charge of them and their property,

and who, by virtue of legal or natural obligations, may be liable for their maintainance, &c. For such necessaries, the minor may also be personally liable.

As to the slaves of the intestate, when the administrator finds it necessary to call in medical assistance to them, no doubt he has the right, and it is his duty to do so, not only as a matter of humanity, but by way of preserving them as property of the estate, for the benefit of the creditors and distributees; and it would be the duty of the Probate Court, to allow to the administrator, the reasonable and necessary expenses so incurred by him, as part of the costs of administration.

But, as between the administrator and the physician, it would be a personal contract. An administrator has no right to make a contract for a *dead man*. *Underwood vs. Millegan ad.*, 5 *Eng. Rep.* 254.

The judgment of the court below is affirmed.