CLIFFORD v. MCALESTER FUEL COMPANY.

Opinion delivered April 24, 1922.

EXECUTORS AND ADMINISTRATORS—PERSONAL LIABILITY OF EXECUTORS.— An executor purchasing coal to complete ditching contracts entered into by his testator in pursuance of direction in the will "to do all things necessary for the proper transaction of any old or new business which may seem to them [the executors] advisable" was not personally liable threfor, in view of the fact that the charge for the coal was made on the seller's books to the estate.

Appeal from Pulaski Circuit Court, Third Division; *Archie House,* Judge; reversed.

The McAlester Fuel Company sued John F. Clifford to recover $3,816.34 alleged to be due it for coal. The defendant denied liability.

The plaintiff is a corporation engaged in the business of buying and selling coal at McAlester, Okla. K. P. Alexander of Little Rock, Ark., was its agent, and as the representative of the plaintiff, had been selling coal for it in large quantities to Edgar J. Hahn for several years prior to his death. Hahn was a contractor and bond broker. In August, 1919, Hahn became ill and was carried to the St. Vincent's Infirmary in Little Rock, Ark. On the 16th day of August, 1919, he executed his will and died on the 20th day of August, 1919, in the infirmary. Hahn at the time of his death had entered into contracts with improvement district commissioners to construct seven drainage ditches and one road. The drainage contracts were far advanced in the course of construction. At the time of his death Hahn had large crews of men, a large amount of material, and a large amount of machinery which were used in the construction of said drainage projects. These contracts all provided for the completion of the improvement within a certain period of time and provided for damages against the contractor in the event they were not completed on the date designated.

The thirteenth and fifteenth clauses of Hahn's will are as follows:

"13. I hereby nominate, constitute and appoint Walter E. Orthwein of St. Louis, Mo., and Jno. F. Clifford, of Little Rock, Ark., my confidential friends, executors of this my last will and testament, and direct that neither of them shall be required to give bond or other security for the proper discharge of their duty hereunder."

"15. I hereby authorize and direct my said executors to do all things necessary for the proper settlement

of my estate, the payment of my debts and the transaction of any old or new business which may, to them, seem advisable. I hereby authorize, direct and empower them to execute, as in their discretion may seem proper, all deeds, leases or contracts, conveying either real or personal property, either in fee, absolute, as security or otherwise, and further direct that their acts in so doing be not questioned.''

Walter E. Orthwein was Hahn's partner in the bond brokerage business with headquarters at St. Louis, Mo. He desired to wind up their partnership as surviving partner, and for that reason did not qualify as executor under the will. J. R. Vinson was appointed in his stead, and with John F. Clifford duly qualified as executor under the will of Edgar J. Hahn, deceased, and after consultation it was deemed to the best interest of his estate to carry out the drainage contracts which Hahn had obligated himself to perform.

Orders from the probate court to that effect were obtained, and the orders were couched in language as broad as the clause of the will above quoted. Hahn was a customer of the McAlester Fuel Company and was accustomed to buy large quantities of coal from it to carry out his drainage and road contracts. After his death his executors continued to buy coal from the plaintiff to be used in carrying out these drainage contracts.

The McAlester Fuel Company understood that the coal was purchased for this purpose and charged the same to the estate of Edgar J. Hahn, deceased. This was done after Alexander had investigated the matter and had been assured by the executors that the estate was solvent. The coal was furnished and charged exclusively to the account of Edgar J. Hahn's estate.

Suit was first brought against Hahn's executors with a view to holding his estate liable for the account sued on herein. That suit was dismissed, and subsequently the present suit was instituted for the purpose of holding Clifford individually liable. J. R. Vinson had died before the coal in question had been purchased.

The circuit court rendered judgment in favor of the plaintiff for the amount sued for, and to reverse that judgment, the defendant has duly prosecuted this appeal.

*J. H. Carmichael* and *Cockrill & Armistead,* for appellant.

Every man has the right to dispose of his property by will as he pleases, with only such limitations as the statute imposes (87 Ark. 243) and such will becomes the law to the personal representative of the deceased. 32 S. E. 16; 34 Ark. 251. The will in question instructed the executor to proceed with certain contracts if necessary for the preservation of the estate, and such acts on the part of the executor in carrying out the will became a charge against the estate and not against the executor individually. See 159 Calif. 755; 116 Pac. 47; 129 S. W. 823, 29 L. R. A. (N. S.) 264; 8 S. E. 180; 32 S. E. 16; 82 Ga. 177; 82 N. E. 194; 1 Daly 360; 10 Ala. 608; 51 Atl. 996.

The executor could at least make such purchases and do such things as were necessary to wind up the estate, or prevent waste. 115 Pac. 717; 69 Pac. 272; 46 S. W. 859; 53 Mo. App. 225; 52 N. E. 1067. See also *Rainey-Milburn Co.* v. *Ford,* 146 Ark. 563.

*Sam T. Poe, Tom Poe, Malcolm W. Gannaway* and *A. Carlyle Gannaway,* for appellee.

An executor is personally liable on a contract made by him, no matter whether the goods be charged to him personally or to the estate. 10 Ves. Jr. 110; 24 C. J. 60; Walker on Executors 228; 3 Williams on Executors 1689; 113 N. Y. 591; 2 How. (U. S.) 560; 32 N. J. Eq. 791; 34 Bea. 434; 12 N. Y. S. 389; 28 N. E. 254; 152 N. Y. S. 173; 135 Pac. 724; 6 Pac. 358; 38 Cal. 85; 20 Fla. 359; 7 Conn. 306; 72 Ala. 224; 5 Gray 403; 7 B. & C. 202; 56 Ark. 159; 34 Ark. 211; 61 Ark. 410.

Neither an order of court nor a direction in the will in any manner affects the personal liability of the executor to those with whom he contracts. 41 N. Y. 315; 34 Ark. 206.

HART, J. (after stating the facts). The theory of the court below, and that upon which it is sought to uphold the judgment, is that a debt contracted by an executor after the death of his testator, although contracted by him as executor, binds him individually, and does not bind the estate which he represents, notwithstanding it may have been contracted for the benefit of the estate. The general rule and numerous cases bearing on the question are collected and reviewed in Ann. Cas. 1915-C, at p. 367; 40 L. R. A. (N. S.) 201, and 3 A. L. R. pp. 1604 and 1608.

The general rule is that the claims and liabilities are fixed at the time of the death. With regard to these suits they must be brought by and against the personal representatives in their character as such. With regard to contracts made by the personal representatives themselves, in the course of administration, they are personal, although for the benefit of the estate. The reason is that the executor or administrator has no right to make a contract for a dead man. Hence the representative becomes the contracting party and is individually liable. *Bomford* v. *Grimes,* 17 Ark. 567; *Yarbrough* v. *Ward,* 34 Ark. 204; *Tucker* v. *Grace,* 61 Ark. 410; and *Bryan* v. *Craig,* 64 Ark. 438.

In the application of the general rule in *Altheimer* v. *Hunter,* 56 Ark. 159, it was said that it was not within the ordinary authority of a probate court to empower an administrator to continue the mercantile business of the deceased, and that an administrator is not empowered to bind the estate of a dead man by making a contract for him. The reason is that the death of a trader puts an end to his business and his executor or administrator has no authority to continue the business unless such authority is conferred by statute or by the terms of a will. The assets pass to the executor or administrator to be collected and applied to the payment of debts, and the remainder to be distributed to the heirs or devisees.

Again in *Altheimer* v. *Hunter, supra,* the court said that an executor may continue the business of his testator when empowered to do so by will, but that he becomes

personally liable for all the debts he contracts in the prosecution of his trust. This language was not necessary for a decision of the issue presented by the appeal in that case, but it is in accord with the general rule on the question as shown by the decisions cited in the case notes above referred to.

A leading case on that phase of the question is *Willis* v. *Sharp,* 113 N. Y. 586, 4 L. R. A. 493. In that case it was recognized that a testator may authorize or direct his executor to continue a trade or to employ his assets in trade or business; and that such authority will protect the executor from responsibility to those claiming under the will in case of loss without his fault or negligence, and also entitle him to indemnity out of the estate for any liability lawfully incurred within the scope of the power.

The court said, however, that it is the settled doctrine of the courts of common law that a debt contracted by an executor after the death of his testator, although contracted by him as executor, binds him individually, and does not bind the estate which he represents, notwithstanding it may have been contracted for the benefit of the estate. The principle upon which the case was decided was that an executor may disburse and use the funds of the estate for the purposes authorized by law, but may not bind the estate by an executory contract, and thus create a liability not founded upon a contract or obligation of the testator. *Austin* v. *Munro,* 47 N. Y. 360.

Again in *Exchange Nat. Bank* v. *Bettes,* (Kan.) 3 A. L. R. p. 1604, it was held that the doctrine that the only effect of contracts made by an executor or administrator is to bind himself individually applies to a contract made by the personal representative, in attempting to carry on and complete a building contract entered into by the decedent in his lifetime.

It was contended in that case that an exception to the general rule would arise in case of building contracts entered into by the decedent during his lifetime, which remained incomplete at the time of his death, and which

the executor or administrator elected to complete. In that case the executor was not directed by the will of the testator to carry out his contract and the case falls within the general rule that the executor can not make a contract for a dead man without being authorized to do so by will or by statute expressly conferring such power. The testator may not have had in mind any one in whom he might have placed confidence sufficient to authorize him to carry out his contract. He might have deemed it more prudent to risk the loss which his estate might suffer in damages by reason of his death preventing his completion of his own contract. In any event, his will did not give his executor power to complete his contract and for that reason he could only administer the estate in due course of law and distribute the assets to the devisees after paying the claims probated against the estate. As we have already seen, he could not make a contract for his decedent without some authority to do so.

The cases where the testator has directed his executor to carry on his business come nearer being like the present case than any to which our minds have been directed; but such cases do not, in the opinion of the court, quite reach to the point here involved. In such cases the primary object of carrying on the business is for the profit to be made from continuing it. It is necessarily a new adventure and must be conducted by the executor independently of any direction or obligation on the part of his decedent. The executor would create new liabilities not expressly authorized by his decedent nor dependent upon any obligations incurred by him. Existing creditors and devisees under the will are not required to have the payment of their debts postponed to await the result of future adventures; and in such cases the executor cannot jeopardize the assets of the estate by making new and independent contracts, although they may be made for the benefit of the estate.

We think there is a marked distinction between a testator appointing a personal trustee in his will to carry on his business generally and directing his executor

to carry out a contract, the obligations of which he had assumed in his lifetime and which would become a charge upon his estate. In the one case, the executor is directed to carry on a new business for profit and in the other to wind up an old one for the purpose of distributing the assets of the estate to those entitled to them.

There are material facts in the present case which did not enter into the discussion or decisions of any of the cases collected above. We recognize the general rule to be that the powers, duties and obligations of the executor or administrator with respect to the estate are defined and limited by the will or statute. He has no interest in the assets, and therefore cannot charge them by any independent and new contract unless authorized by statute or the will.

Hahn made his will while lying sick in the hospital and died four days later. At the time he was stricken, he had various drainage ditches in the course of construction under contracts which were binding upon him and which would become charges against his estate. There had been a material rise in the prices of labor and materials since he had executed the contracts. He had the necessary machinery on hand with which to carry out his contracts. He had on hand a large amount of supplies and materials and was actively engaged in carrying out his contracts when he became sick. Doubtless he recognized the serious loss to his estate if no provision was made by him for completing his contracts. In the fifteenth clause of his will, in explicit and comprehensive language, Hahn conferred authority upon his executors to complete his unfinished contracts after his death. His evident purpose was to put his executors in his place with like authority as himself in the premises. The trust sought to be accomplished was not primarily to make a profit for the estate out of his business, but to dispose of and realize upon the assets to the best advantage. The language used is very broad and comprehensive. The testator directed his executors to do all things necessary for the proper settlement of his estate, the payment of

his debts, and the transaction of any old or new business which seemed advisable to them. They were empowered to execute, as in their discretion seemed proper, all deeds, leases or contracts, conveying either real or personal property in fee or as security or otherwise. The testator further directed that the acts of his executors in the premises should not be questioned and that neither of them be required to give bond.

Thus it will be seen that the testator had unlimited confidence in the honesty and business ability of his executors.

The language of the will is even broader than that in *Ferguson* v. *Ferguson,* 148 Ark. 290, which we construed to authorize the executor to mortgage the land of his testator for the purpose of borrowing money to enable him to cultivate the land for the current year. The executors in the case at bar were made the personal trustees of the testator for the purpose of carrying out his contracts and thus preventing great loss to his estate. Evidently there was no intention of continuing the business for the mere purpose of profit. The grant of the power and the imposition of the duties upon the executors were inconsistent with their personal liability in the premises. Such a trust could not be carried on without the expenditure of large sums of money, and the idea that the executor was expected to assume the burden thereof and the estate not be liable is utterly inconsistent with the terms of the will and the relation of the executors to the estate. They were given absolute power to sell or mortgage the estate, and the will further directed that their acts in so doing should not be questioned. The idea that the executors should be personally liable for expenditures made by them in carrying out the trust is inconsistent with the express power conferred upon them to make such contracts as they deemed necessary and to sell or mortgage the estate for that purpose.

The record shows that the plaintiff had been supplying Hahn with coal to be used in carrying out his

drainage contracts, and that it supplied the coal to his estate for the purpose of completing them. The plaintiff charged the estate with the coal sold, and the court is of the opinion that the peculiar circumstances of this case bring it within an exception to the general rule, and that the language of the will was sufficiently broad and comprehensive to empower the executors to make the contract sued on for the benefit of the estate. In short, the contract sued upon was made pursuant to express authority conferred by the will upon the executors to enable them to carry out contracts, the obligations of which had been incurred by the testator in his lifetime.

It follows that the court erred in finding for the plaintiff, and the judgment will be reversed and the cause remanded for further proceedings according to law.