Estate of Alice T. Luther, Deceased, Thomas F. Luther, Executor v. Commissioner.
Estate of Luther v. Commissioner
Docket No. 738-66.
United States Tax Court
T.C. Memo 1970-113; 1970 Tax Ct. Memo LEXIS 247; 29 T.C.M. (CCH) 500; T.C.M. (RIA) 70113; May 13, 1970, Filed D. Chase Troxell, 30 Rockefeller Plaza, New York, N. Y., for the petitioner. William F. Chapman, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner originally determined a deficiency in petitioner's estate tax in the amount of $52,611.86, and thereafter, in an Amendment to Answer, he claimed an increased deficiency of $276,697.29, or a total of $329,309.15. The issues are (1) whether the decedent had a half interest in a partnership which allegedly owned certain real estate which was includable in her gross estate and (2) whether the decedent in any event had an interest in the proceeds of condemnation of a portion of such real estate which was includable in her gross estate. Findings of Fact Some of the facts are stipulated and are incorporated herein by this *248 reference. Petitioner is the estate of Alice T. Luther, Deceased, who at all times prior to her death was a citizen and resident of the United States. She was born September 24, 1865 and died August 14, 1961. Her son, Thomas F. Luther, became executor of her will. He filed a Federal Estate Tax Return on or about December 21, 1962 on behalf of the estate with the district director of internal revenue, Albany, New York. He was a resident of the State of New York at the time the petition herein was filed. Alice T. Luther was survived by her two children, Thomas F. Luther and Margaret C. Luther. Thomas C. Luther ("Thomas, Sr."), Alice's late husband, died December 29, 1937, leaving a will in which he devised his residuary estate as follows: THIRD. All the rest, residue and remainder of my estate, both real and personal and wheresoever situate, I give, devise and bequeath as follows: One-fourth therof to my son, Thomas F. Luther. One-fourth thereof to my daughter, Margaret C. Luther. The use, control and possession of the remaining one-half of the said residuary estate to my wife Alice T. Luther during her life. At her death, I give, devise and bequeath the said one-half of *249 said 501 residue to my children Thomas F. Luther and Margaret C. Luther, share and share alike. I direct that the title to this half of said residue shall not vest until the death of my wife. In case my son shall not be living at the time of the decease of my wife, I give, devise and bequeath one-half of the share so given to him to my daughter, Margaret C. Luther and the remaining one-half of said share to my son's issue if any there be living at the time. The term "issue" in this case shall include any child or children begotten at the time of the decease of my said wife though born subsequent thereto. If there be none living, then I give, devise and bequeath said share to my daughter, Margaret C. Luther. In case my daughter shall not be living at the time of the decease of my wife, I give, devise and bequeath the share so given to her, to her issue (if she should marry) if any there be living at the time. If there be none living, then I give, devise and bequeath said share to my son, Thomas F. Luther. Article FOURTH provided for other disposition of the residuary estate in the event of death of Alice, Thomas, Jr., and Margaret as the result of a common accident. The *250 foregoing residuary estate represented the great bulk of the assets left by Thomas, Sr., and consisted primarily of certain forest lands near Saratoga Lake and a summer hotel with cottages and related buildings in that area. His widow ("Alice," the decedent herein) and his two children ("Thomas, Jr.," and "Margaret") became co-executors of his will; however, Thomas, Jr., was the only active co-executor. The forest lands ultimately became known as The Luther Forest, and consisted of some 6,300 acres of timberland. The summer hotel was located in or adjacent to that acreage. Thomas, Sr., had acquired the land comprising The Luther Forest on a piece-by-piece basis beginning about 1886. By 1916 Thomas, Sr., owned about 3,264 acres which he planted with either Red or White Pine. Thomas, Sr.'s ancestors had settled in the Saratoga area in the early 1600's and Thomas, Sr., was motivated by his strong family attachments and his interest in conservation to create the Forest. Thomas, Jr., was trained as a forester and except for a period of military service during World War II, he operated The Luther Forest from 1919 until his retirement in 1960. Neither Margaret nor Alice ever participated *251 in the operation of the Forest. Upon the death of Thomas, Sr., his widow and two children decided not to sever their interests in the properties left to them under the foregoing residuary devise. Accordingly, in order to conduct the enterprises represented by such properties as a unit, they executed on January 7, 1938, a "Certificate of Persons Doing Business under an Assumed Business Name" stating that they intended to conduct a business under the name of The Luther Company. That certificate stated: WE DO HEREBY CERTIFY that the undersigned on and after this date intend to conduct a business of operating a summer hotel, cottages and beach and a bath house and sulphur spring at Saratoga Lake, N. Y., and also to transact the business of lumbering, both wholesale and retail, and the sale of forest products, both wholesale and retail, and all business incidental thereto, under the name of THE LUTHER COMPANY, with its main office at Saratoga Springs, New York; and that the true or real full name of each of the persons conducting or transacting such business hereinbefore set forth, with the post office address of each of said persons is as follows: Thomas F. Luther, 11 Madison Avenue, *252 Saratoga Springs, N. Y. Alice T. Luther, Stillwater, New York Margaret C. Luther, Stillwater, New York Dated at Saratoga Springs, N. Y., January 7, 1938. A Fiduciary Income Tax Return (Form 1031), was filed on behalf of the Estate of Thomas, Sr., on or about January 28, 1939, wherein it was stated: The estate of Thomas C. Luther, who died December 29, 1937, was immediately upon the probate of the Will turned over to the distributees, Alice T. Luther, widow, Thomas F. Luther, son, and Margaret C. Luther, daughter, who received the entire estate under the Will. The aforesaid three persons formed a partnership doing business under the name of The Luther Company, with principal office at Saratoga Springs, N. Y. A full account of receipts of income, gains, losses, etc., will be prepared by the partnership, The Luther Company, and the distribution accounted for by the individuals receiving distributive shares of profits. Thomas F. Luther, above named, is the managing partner of the partnership, and is signing this statement as such. Dated January 28, 1939. /s/ Thomas F. Luther 502 In February 1939 a Form 1065, Partnership Return of Income was filed on behalf of The Luther *253 Company for the taxable year 1938. Attached to this return was the following statement: Note. Thomas C. Luther, died Dec. 29, 1937 and his entire estate was bequeathed and devised to his widow, son and daughter. They immediately formed a partnership under the name The Luther Company and the entire estate was turned over to The Luther Co. and is managed and conducted by said Company. By placing the operations of the hotel and The Luther Forest under The Luther Company the Luthers sought to achieve centralized management through Thomas, Jr., as the principal active "partner," and to avoid the necessity of having checks and other papers relating to these businesses signed by all three of them either as executors or as individuals. The Luthers did not enter into any written partnership agreement with respect to The Luther Company; they did not execute any deeds or conveyances to The Luther Company in respect of any of the properties comprising the residuary estate of Thomas, Sr.; and neither Thomas, Jr., nor Margaret intended to increase Alice's interest in any of those properties by the creation of The Luther Company or the filing of the Certificate of Doing Business. It was understood *254 among the Luthers that Alice would receive 50 percent, Thomas, Jr., 25 percent, and Margaret, 25 percent of the profits arising from the operation of The Luther Company. From the time of Thomas, Sr.'s death Alice lived with her daughter Margaret. She had a small amount of her own property and lived simply. Her estate tax return discloses that at her death she owned securities of an aggregate fair market value of $65,315.18 and had a bank account with a balance of $2,191.80. On May 28, 1942, Alice, Margaret, and Thomas, Jr., individually and as executors of the Last Will and Testament of Thomas, Sr., sold the summer hotel and its land to unrelated parties. Between the dates of death of Thomas, Sr., and Alice, a few parcels of land were purchased and added to The Luther Forest. In each case the deeds listed the grantees as Thomas, Jr., and Margaret. Also during the period between the deaths of Thomas, Sr., and Alice a few small parcels of land were sold from The Luther Forest. The deeds to these parcels listed the grantors as Thomas, Jr., Margaret, and Alice, individually and as executors of the estate of Thomas, Sr., or in one case as "devisees under the estate of" Thomas, Sr. *255 On occasion, "moulding" sand and timber rights were sold from The Luther Forest. In such cases The Luther Company often executed the documents of sale as seller. In 1945, 83 acres located at the center of The Luther Forest plus easements and a safety area were leased to the United States Government for the construction and operation of a rocket testing facility. The United States remained in possession under the lease until it took by condemnation 165.36 acres plus easements and a safety area for a period of years commencing October 28, 1952. The United States thereupon remained in possession as lessee until it took by condemnation a fee interest in the property on March 3, 1955. An action was commenced in the Federal District Court for the Northern District of New York to determine the compensation payable to those having an interest in the condemned property. After a lengthy trial, the Court by order dated June 23, 1965, made the following awards: For the taking of the leasehold interest from October 28, 1952 to March 3, 1955
$ 31,024.89
Interest at 6% on such leasehold taking as follows:
On $31,024.89 from 10/28/52 to 10/27/53
$ 1,861.49
On $28,339.73 from 10/28/53 to 9/15/54
1,504.72
On $26,733.99 from 9/16/54 to 4/11/63
13,746.39 17,112.60
For the taking of the fee interest on March 3, 1955
332,881.53
Interest at 6% on such fee taking as follows:
On $316,950.53 from 3/3/55 to 9/3/59
85,706.90
On $220,453.50 from 9/4/59 to 4/11/63
47,654.19
133,361.09
Total
$514,380.11
*256 In respect of the interests of those persons entitled to share in the proceeds of the award, the order, as amended December 27, 1965, provided as follows: 503 "5. That as of October 28, 1952 and March 3, 1955, Thomas F. Luther and Margaret C. Luther were each the owner and holder of a one-fourth interest in fee simple of the lands which are the subject of this proceeding, and Alice T. Luther had only the life use, control and possession of the remaining one-half interest in said lands with the title to said remaining one-half interest vesting only upon the death of said Alice T. Luther, and said persons, or their estate, are entitled to be paid and receive the compensation awarded herein in accordance with their respective interests as aforesaid." The total expenses incurred in connection with the condemnation proceedings were $111,871.72. All the accounting records of The Luther Forest were personally kept by Thomas, Jr. He used the single-entry method, making entries in one or more ledgers and relying on checks and check stubs to show income and expenses. The principal ledger was lost sometime before the trial herein. All of the items of income and expense relating *257 to the operation of The Luther Forest (and the hotel until it was sold) were reported for Federal income tax purposes from 1938 to August 14, 1961 on partnership returns. In all the partnership returns filed on behalf of The Luther Company from 1938 through 1961 ordinary income or loss is shown as being divided, 50 percent to Alice and 25 percent each to Thomas, Jr., and Margaret. In the partnership returns for 1938 through 1942 and for 1945 and 1946, the partners' percentages of time devoted to the business were stated to be: Thomas, Jr., 100 percent; Margaret, 25 percent; and Alice, 25 percent. In the returns for 1947 through 1955, the percentages of time devoted to the business were stated to be: Thomas, Jr., 100 percent; Margaret, 25 percent; and Alice, 5 percent. In the returns for 1956 through 1959, percentages of time devoted to the business were stated to be: Thomas, Jr., 100 percent; Margaret, 25 percent; and Alice, 0 percent. From 1938 to August 14, 1961, The Luther Company reported aggregate net "ordinary" losses of $174,419.92, a "special" loss in 1941 of $6,990.01, net gains from sales of timber and sand of $41,549.07, and charitable contributions of $1,095. The total *258 of these items is a deficit of $140,955.86. In addition, the partnership returns for these years disclose aggregate net gains from the sales of securities and land (exclusive of items relating to conversion) in excess of $50,000. Between 1938 and her death, Alice withdrew a little over $4,000 from The Luther Company. The parties have stipulated that the value of The Luther Forest at the date of Alice's death was $550,000. Alice died August 14, 1961, at the age of 95. Petitioner filed a Federal estate tax return in which no amount was included in the gross estate with respect to her interest in the condemnation award or The Luther Company. A rider was attached to the estate tax return stating that the value of Alice's interest in the condemnation award could not be determined at that time because the condemnation action was still pending. Exclusive of such item, the taxable estate was $2,226.29. In his notice of deficiency dated November 30, 1965, the Commissioner determined that "the taxable estate of the decedent, Alice T. Luther should be increased by $204,120.27 representing her interest in the proceeds of the condemnation of certain properties." In an Amendment to Answer, *259 the Commissioner sought to redetermine the foregoing deficiency in estate tax by increasing it by $276,697.29. The ground for the increased deficiency was stated to be as follows: "As of August 15, 1961, Alice T. Luther was possessed of a partnership interest in the * * * Luther Company, which said partnership possessed assets of a value of at least $2,013,900.00." Opinion RAUM, Judge: The Commissioner's original determination of deficiency in the amount of $52,611.86 was based primarily upon an addition to the gross estate in respect of the decedent's interest in the proceeds of the condemnation of a portion of The Luther Forest, which had not been included in the estate tax return. He later changed the theory of the Government's case by claiming in addition in an Amended Answer that when the decedent died she had a one-half interest in a partnership. The Luther Company, that the partnership had assets of a value of over $2,000,000 which consisted primarily of The Luther Forest, and that by including her alleged one-half interest in that partnership in her gross estate there was a total deficiency in the amount of $329,309.15. Plainly, the Government has the burden of proof in *260 respect of the increased deficiency. We hold first, 504 that there is no valid basis for such increased deficiency, and second that while the gross estate should be increased by an amount reflecting the decedent's interest in the proceeds of the condemnation, such amount is substantially less than that upon which the Commissioner based his original determination of deficiency. 1. The Commissioner's principal argument is that Alice and her two children contributed their interests in the residuary estate of Thomas, Sr., to a partnership known as The Luther Company, that she acquired a one-half interest in that partnership (which included The Luther Forest), and that such one-half interest in the partnership must be included in her gross estate under section 2033, I.R.C. 1954[1] We hold that the factual basis for this contention is entirely lacking. At her husband's death, Alice acquired only a life interest in one-half of his residuary estate. Remainder interests *261 in that one-half were given to Thomas, Jr., Margaret, and other contingent beneficiaries. Without question, if Alice had died possessed merely of the life interest given to her by her husband, no amount in respect thereof would have been included in her gross estate. See Williams v. United States, 41 F. 2d 895, 897 (Ct. Cl.). Her interest would simply have terminated at her death and nothing would remain to be treated as passing from her at that time. And in our judgment, a life interest is all that Alice had in respect of the properties in question at the time of her death, notwithstanding the conduct of the business in partnership form. The creation and preservation of The Luther Forest had been the life's work of Thomas, Sr. Thomas, Jr., took over the operation of the Forest after World War I and he continued to operate and develop the Forest until his father's death in 1937. Upon the death of Thomas, Sr., the Luther family, consisting of Alice, Margaret, and Thomas, Jr., wished to continue the operation of the Forest as a single business unit, without the inconvenience of transacting business in name of Thomas, Sr.'s estate or individually. Alice was 72 years of *262 age at this time. To accomplish their desire to conduct the business conveniently and as a single unit the Luthers "turned over" their interests in the Forest to The Luther Company, the entity name chosen to conduct the business of the Forest on their behalf. To permit the use of the name "The Luther Company" the Luthers filed a certificate of Doing Business under an Assumed Name. Under the arrangement chosen by the Luthers the profits of the business were to be divided in accordance with the interests received under Thomas, Sr.'s will, to wit, 50 percent to Alice, 25 percent to Margaret, and 25 percent to Thomas, Jr. The Luthers did not convey their interests in the Forest to The Luther Company nor is there any evidence that they intended that their respective interests in the Forest be increased or decreased by the creation of The Luther Company. During the years of operation of The Luther Forest the profits and losses of The Luther Company were reported for Federal income tax purposes on partnership returns. We would agree with the Commissioner that the Luthers entered into a partnership when they "turned over" their interests in the Forest to The Luther Company for operation. *263 Whether The Luther Forest thereby became an asset of The Luther Company, the proportionate value of which is includable in Alice's gross estate, is a wholly different matter. On the record here, we think it clear that The Luther Forest did not become an asset of The Luther Company and that, accordingly, no amount attributable to the value of The Luther Forest is includable in Alice's estate. Even though the Luthers "turned over" their interests in The Luther Forest to The Luther Company for operation we think that their intention in so doing was merely to have The Luther Company act as agent for their collective individual interests. The Commissioner has not shown their intention to be otherwise. The Luthers did not transfer their interests in the Forest to The Luther Company and both sales and purchases of forest land were made in the names of the Luthers as individuals or the estate of Thomas, Sr. The sales of timber and sand in the name of The Luther Company were in the nature of ordinary business transactions of The Luther Company and the fact that these sales were not made in the names of the Luthers as individuals is 505 of no significance here. In short, we think that *264 the partnership only managed the individual shares of the Forest but did not own it. The validity of such an arrangement is clear under the laws of New York as it has often been held that title to the property used by a partnership may be retained by the individual partners. Dexter v. Dexter, 43 App. Div. 268, 60 N. Y. S. 371 (4th Dept. 1889); Hillock v. Grape, 111 App. Div. 720, 97 N. Y. S. 823 (4th Dept. 1906); Chalmers v. Weed, 175 Misc. 740, 25 N. Y. S. 2d 195 (Sup. Ct. N. Y. Co. 1941); Pelaga's Estate, 145 N. Y. S. 2d 271 (Surr. Ct. N. Y. Co. 1955). Thus, since the ownership of The Luther Forest remained in the hands of the Luthers individually, Alice's interest in The Luther Forest ceased at the time of her death. The value of her interest in the partnership cannot, therefore, be measured with reference to the value of The Luther Forest. Moreover, even if The Luther Forest had become an asset of The Luther Company, Alice had no claim on this asset at the time of her death. Consistent with her life interest in one-half of The Luther Forest, the understanding among the Luthers was merely that Alice was to share in one-half *265 the profits of the enterprise. But there is no showing that she was given an unrestricted one-half interest in the assets. For Alice's interest to have become enlarged in this respect would have meant that Thomas, Jr., Margaret, and the contingent remaindermen, or some appropriate combination of them would have had to relinquish portions of their shares of the Forest to Alice. There is no basis whatever in the record for such a finding, bearing in mind that the burden of proof in this connection is upon the respondent. We hold that no amount of a partnership interest reflecting the value of The Luther Forest may be included in Alice's gross estate. 2. We agree with the Commissioner, however, that an amount must be included in Alice's gross estate reflecting her interest in the proceeds of the condemnation. The evidence in respect of the condemnation proceeding shows that the judgment finally entered called for the payment of a total of $514,380.11 and that the expenses incurred were in the aggregate amount of $111,871.72. The Commissioner's original determination treated $204,120.27 of the net amount of that award as being allocable to Alice and included it in her gross estate. *266 The record does not show how that amount was computed. Nevertheless, the record does show that it is excessive, since it obviously fails to take into account the fact that Alice had only a life interest in one-half The Luther Forest. The gross amount of the award, $514,380.11, consists of a number of components, only some of which are applicable to Alice. Thus, it contains an item of $31,024.89 for the leasehold interest from October 28, 1952 to March 3, 1955. Plainly, one-half of this is chargeable to Alice. The award also contains various items of interest in respect of that leasehold item, and it is equally plain that one-half of such interest up to the time of her death is similarly chargeable to her. On the other hand, the award contains an item of $332,881.53 for the taking of the fee on March 3, 1955. And although no part of that item is allocable to Alice, since she had only a life estate, one-half the interest in respect of that item up to the date of her death (which, in the absence of any evidence indicating otherwise, may fairly be taken to represent the value of her life estate) is allocable to her. In sum, the amount to be included in the gross estate is limited to *267 (a) one-half the leasehold condemnation item, plus (b) one-half the interest in respect of the leasehold item until the time of death, plus (c) one-half the interest attributable to the fee accrued to the time of death. This amount should be reduced by Alice's share of the litigation expenses. [2]
Petitioner argues that the amount includable in Alice's gross estate should be reduced further by her withdrawals from the partnership (some $4,000) and one-half the aggregate "net losses" of The Luther Company as reported on its income tax returns for the years 1938-1961. However, *268 there is much fog surrounding those alleged "net losses", and there is nothing in the record to establish to our satisfaction that Alice was indebted either to The Luther Company or to her two children in respect of either the "net losses" or her withdrawals. 506 The record does not contain any balance sheet of the partnership as of the time of Alice's death, or as of any other time, nor is there any evidence as to the state of her capital account in the partnership. In these circumstances, we can hardly approve a reduction of the amount otherwise properly includable in the gross estate. We leave it to the parties to make the proper computation of the amount to be included in accordance with this opinion. Decision will be entered under Rule 50. Footnotes
1. SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST. The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.↩
2. There is an indication in the record that some portion of the condemnation proceeds was paid by the United States prior to Alice's death. To the extent that any part thereof may have in fact been distributed to Alice, the amount includable in her gross estate should be reduced by that part. However, we cannot make any finding on this record as to whether any such part was in fact distributed to her or even as to the amount thereof. Nevertheless, if the parties can agree as to any such amount that was actually paid over to her, it will be taken into account in the decision to be entered under Rule 50.↩